Ricky HOUSTON, Plaintiff–Appellee,

v.

Allen REICH, Harold Dean McHam, the Excise Board of Choctaw County, Oklahoma, Defendants,

and

The City of Hugo, Oklahoma, Defendant–Appellant.

No. 90–7007.

United States Court of Appeals, Tenth Circuit.

May 7, 1991.

Joe Stamper of Stamper, Otis & Burrage, Antlers, Okl., for plaintiff-appellee.

Kennedy, Kennedy, Wright & Stout, Muskogee, Okl., for defendant-appellant.

Submitted on the Briefs.*

Before BALDOCK, BARRETT, and BRORBY, Circuit Judges.

BARRETT, Senior Circuit Judge.

The City of Hugo, Oklahoma (City) appeals from a mandamus order issued by the District Court directing the City and the Excise Board of Choctaw County, Oklahoma, to make tax levies in accordance with Okla.Stat. tit. 51, § 151, *et seq.* (the Governmental Tort Claims Act) and Okla. Stat. tit. 62, § 365.1, *et seq.* (public finance in satisfaction of money judgments) to retire a judgment entered in favor of Ricky Houston (Houston) in his civil rights suit against Allen Reich (Reich) and Harold Dean McHam (McHam), former police officers of the City.

## Background

Plaintiff Houston filed a 42 U.S.C. § 1983 civil rights complaint following an altercation he had on the evening of October 31, 1984, at Hugo, Oklahoma, with City police officers Reich and McHam. Houston complained that Reich and McHam severely beat him without provocation or excuse while acting as officers of the Police Department of the City and that they did so in violation of his constitutional rights. Houston also complained that the City had:

tolerated and permitted a pattern of illegal beatings by its police officers; encouraged its police officers to believe that they could violate the rights of persons with impunity; and failed to properly train and instruct its officers so as to prevent such occurrences as suffered by Houston. Houston sought damages, both compensatory and punitive.

The defendants City, Reich and McHam filed a joint answer to Houston's complaint. They admitted, *inter alia*, that at all times mentioned in the complaint Reich and McHam were duly appointed and acting police officers of the City and that Reich and McHam were acting under color of law, to wit, under color of the statutes, ordinances, regulations, policies, customs and usages of the State of Oklahoma and/or the City. As an affirmative defense, the defendants jointly alleged that: Reich and McHam were involved in an investigation of a shooting death when Houston sought to interfere, resulting in his arrest; Houston resisted arrest and sought to escape and/or to retrieve a weapon with which to attack Reich; and the force used by Reich and McHam was necessary in order to accomplish Houston's arrest. Defendant Reich filed a counterclaim against Houston, alleging that he was subjected to an unwarranted and vicious attack by Houston resulting in severe cuts, bruises and contusions. Reich sought both compensatory and punitive damages.

The trial court granted the City's motion for a directed verdict at the close of Houston's case. The jury returned a verdict in the amount of $4,800 in compensatory damages and $5,200 in punitive damages against Reich and $1,200 in compensatory damages and $1,300 in punitive damages against McHam. Thereafter, the court entered an order granting Houston attorney's fees in the amount of $25,690.84 against Reich and McHam.

Houston's efforts to collect his judgment from Reich and McHam were unsuccessful. Thereafter, Houston filed a motion with the

---

* The parties to this appeal have indicated that oral argument is not desired. After examining the briefs and the appellate record, this three-judge panel has determined that oral argument would not materially assist the determination of this appeal. *See* Fed.R.App.P. 34(a); 10th Cir.R. 34.1.9. The cause is therefore ordered submitted without oral argument.

court for a Fed.R.Civ.P., Rule 69 order in aid of the judgment and in aid of execution, praying that the court make the Excise Board of Choctaw County an additional party defendant and direct the Excise Board and the City to make levies pursuant to 62 Okla.Stat. 365.5 sufficient to pay the aforesaid judgments, with interest. The City resisted the motion on the grounds that (a) the City had been eliminated as a defendant in the action by its motion for directed verdict, and (b) the judgment was secured against Reich and McHam individually.

The district court granted Houston's motion for orders enforcing the judgments, finding that (a) the judgments against Reich and McHam were in their official capacity as police officers of the City while they were acting within the scope of their employment, (b) the court was authorized to add additional parties in aid of its judgment and execution thereon pursuant to Fed.R.Civ.P., Rule 69(a), (c) the Oklahoma Governmental Tort Claims Act, Okla.Stat. tit. 51, § 162(D), authorizes payment of judgments against employees by a municipality in civil rights actions, (d) a governmental entity is liable for a § 1983 judgment against its employees or officials when the judgment results from the officials' acts within the scope of employment and the public entity had notice and an opportunity to respond, which was the case here, and (e) the pretrial order admits that Reich and McHam were acting at all relevant times as officers of the City (R., Vol. I, Tab 18).

*Appellate Contentions–Disposition*

On appeal, the City contends that: (1) under federal law, the judgment entered against the individual defendants Reich and McHam cannot be collected from the City because they were sued only in their individual, rather than official, capacities; (2) in any case, it is not liable under federal law for the judgment entered against Reich and McHam because that judgment was entered against them individually, and not in their official capacities as police officers for the City; (3) the trial court erred in ruling that the Oklahoma Governmental

Tort Claims Act applies; and (4) the trial court erred in ordering the City to pay the punitive damage award even if the Governmental Tort Claims Act applied and in not reducing the attorney fee award attributable to the punitive damage award.

I.

■ The City contends that, under federal law, the judgment entered against the individual defendants Reich and McHam cannot be collected from the City because they were sued only in their individual, rather than official, capacities.

In *Kentucky v. Graham*, 473 U.S. 159, 105 S.Ct. 3099, 87 L.Ed.2d 114 (1985), the Court instructed that if the complaint does not clearly indicate that defendants are being sued individually and/or in their official capacities, the determination must be made by reviewing " 'the course of the proceedings.' " *Id.* at 167 n. 14, 105 S.Ct. at 3106 n. 14, *quoting Brandon v. Holt*, 469 U.S. 464, 469, 105 S.Ct. 873, 876, 83 L.Ed.2d 878 (1985). Thus instructed, we have reviewed the "course of proceedings" in this case in order to determine the basis upon which this action was initiated and litigated. We conclude that even though the caption of the pleadings did not indicate on what basis the defendants Reich and McHam were being sued, the pleadings, pre-trial order, and instructions make it clear that the suit was brought against Reich and McHam in their official and individual capacities.

The complaint filed by Houston alleged, *inter alia*, that the action was for damages, both compensatory and punitive, against Reich and McHam as Police Officers of the City and individually, and against the City, for violation of Houston's constitutional rights on the evening of October 31, 1984, when the defendants Reich and McHam, acting under color of state law, severely beat, assaulted and used unreasonable, excessive and deadly force in arresting Houston without provocation, justification or cause; and that the individual defendants, Reich and McHam, subjected Houston to these constitutional deprivations maliciously or by reckless disregard

of his rights (R., Vol. I, Tab 1). The Complaint further alleged that the City was liable because it tolerated and permitted a pattern of illegal beatings and assaults by its police officers and failed to train, investigate and discipline its police officers.

The defendants admitted the following paragraphs 6, 7, and 8 of Houston's Complaint in their joint Answer:

6. Defendants Reich and McHam at all times mentioned herein, were duly appointed and acting officers of the Police Department of the City of Hugo.

7. At all times mentioned herein the defendants Reich and McHam were acting under color of law, to wit, under color of the statutes, ordinances, regulations, policies, customs and usages of the State of Oklahoma and/or the City of Hugo.

8. The defendant City of Hugo is a municipality duly incorporated under the laws of the State of Oklahoma.

*Id.* at Tab 2.

The Pre–Trial Order recognized Houston's allegations that on the evening of October 31, 1984, the "individual defendants," Reich and McHam, as distinguished from the municipal defendant, the City, while acting under color of law as police officers for the City, subjected Houston to constitutional deprivations. The Pre–Trial Order contained the following stipulation of facts:

b> That defendants Reich and McHam were at all times relevant, duly appointed and acting officers of the Police Department of the City of Hugo.

c> That at the time of the occurrences, the defendants Reich and McHam were acting under color of law, to wit, under color of the statutes, ordinances, regulations, policies, customs and usages of the State of Oklahoma and/or the City of Hugo.

*Id.* at Tab 4, p. 5.

After granting the City's motion for a directed verdict, the court initially instructed the jury that it was not to consider the claims against the City in its deliberations. (R., Vol. II, p. 148). The court then instructed that: this was a civil rights cause of action whereby plaintiff Houston sought money damages against "the defendants" for deprivation of his constitutional rights under the Fifth and Fourteenth Amendments to the Constitution "while the defendants were acting under color of state law;" Houston alleged that on the evening of October 31, 1984, the defendants Reich and McHam, while acting as police officers for the City, assaulted and beat him without justification or provocation, causing him injuries; and at all times the defendants Reich and McHam alleged that they were acting in good faith in the lawful performance of their duties as police officers. *Id.*

Further, the court instructed that acts are done under color of state law "[n]ot only when state officials act within the bounds or limits of their lawful authority, but also when such officers act without and beyond the bounds of their lawful authority" and that "[i]n order for unlawful acts of an official to be done under color of any law, the unlawful acts must be done while the official is purporting or pretending to act in the performance of his official duties; that is, the unlawful facts [sic] must consist in an abuse or misuse of power which is possessed by the official only because he is an official, and the unlawful acts must be of a nature and be committed under such circumstances that they would not have occurred but for the fact that the person committing them was an official purporting to exercise his official powers." *Id.* at 150–51.

The court instructed with respect to what constitutes reasonable or excessive force used by arresting officers in making an arrest, *id.*, and that "[f]orce inspired by unwise excessive zeal amounting to an abuse of official power that shocks the conscience or by malice is sufficient to sustain a cause of action against the arresting officer." *Id.* at 152–53. The court also instructed that "[i]ndividual persons acting under color of law are not liable for damages unless they knew or reasonably should have known that the acts or omissions by them would violate a Constitutional right of plaintiff, or unless they acted or

omitted to act with deliberate intention to cause a deprivation of plaintiff's Constitutional Rights," and "[i]f you find ... that the individual defendants ... acted or failed to act in reliance upon a good faith belief that their acts or omissions were lawful, reasonable, and proper, then those individual defendants, or either of them, are not liable for damages." *Id.* at 155.

The district court instructed on the elements constituting actual, nominal, and punitive damages. *Id.* at 158–60. The court stated that in order to award exemplary or punitive damages, the jury must find that the conduct of a defendant amounted to gross negligence and willful and wanton conduct amounting to a reckless disregard of the plaintiff's rights. *Id.* at 159.

We are satisfied, following our review of "the course of proceedings" in this case, that the pleadings and instructions stated both a personal-capacity and official-capacity action against Reich and McHam.

## II.

▪ The City argues that, in any case, it is not liable under federal law for the judgment entered against Reich and McHam because that judgment was entered against them individually and not in their official capacities as police officers. We agree.

*Monell v. New York City Dept. of Social Services,* 436 U.S. 658, 690, 98 S.Ct. 2018, 2035, 56 L.Ed.2d 611 (1978), made it clear that local government officials sued under § 1983 in their official capacities are one and the same as the governmental entity they represent only if the local government would be suable in its own name, and that states are protected by the Eleventh Amendment while municipalities are not. *See also McGhee v. Draper,* 639 F.2d 639, 642 (10th Cir.1981). In *Starrett v. Wadley,* 876 F.2d 808, 818 (10th Cir.1989), we cited to *Monell v. New York City Dept. of Social Services, supra,* to distinguish the basis of municipal liability under § 1983:

[The Court] described municipal policy as a 'policy statement, ordinance, regulation or decision officially adopted and promulgated by [a municipality's] officers.' ... It described municipal custom as 'persistent and widespread ... practices of ... officials....'

*Monell* recognized that municipalities could be liable under § 1983 if the deprivation of a federally protected constitutional or statutory right was the result of action taken "pursuant to official municipal policy of some nature," and that only when the "execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury ... the government as an entity is responsible under § 1983." *Monell, supra,* 436 U.S. at 691, 694, 98 S.Ct. at 2036, 2037.

Since *Monell,* the Supreme Court, in *Pembaur v. City of Cincinnati,* 475 U.S. 469, 106 S.Ct. 1292, 89 L.Ed.2d 452 (1986), explained that a municipality cannot be liable under § 1983 for acts of a municipal official unless that official possesses final policymaking authority to establish municipal policy with respect to acts in question. And in *City of St. Louis v. Praprotnik,* 485 U.S. 112, 108 S.Ct. 915, 99 L.Ed.2d 107 (1988), the court held that acts of an official which had been officially sanctioned or ordered were acts of the municipality. *See also Ware v. Unified School Dist. No. 492,* 881 F.2d 906 (10th Cir.1989).

In *Seibert v. Oklahoma,* 867 F.2d 591 (10th Cir.1989), we held that a § 1983 suit against state officers in their individual capacities was not barred by the Eleventh Amendment, inasmuch as such suits proceed on the theory that when the officers act unconstitutionally, they are stripped of their official or representative character and are thus subjected to the consequences of their conduct. The affirmative defense of qualified (good faith) immunity is available to all governmental officials, including police officers in a § 1983 action. *Anderson v. Creighton,* 483 U.S. 635, 107 S.Ct. 3034, 97 L.Ed.2d 523 (1987); *Gomez v. Toledo,* 446 U.S. 635, 100 S.Ct. 1920, 64 L.Ed.2d 572 (1980); *England v. Hendricks,* 880 F.2d 281 (10th Cir.1989), *cert. denied,* — U.S. ——, 110 S.Ct. 1130, 107 L.Ed.2d 1036 (1990). In such cases, the inquiry always is whether the conduct alleged violated clearly established statutory or con-

stitutional rights of which a reasonable person would have known. *Harlow v. Fitzgerald*, 457 U.S. 800, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982).

In *Ware v. Unified School Dist. No. 492, supra,* we outlined the basis for municipal liability under § 1983:

> Liability under section 1983 cannot rest upon the doctrine of *respondeat superior. See City of Canton* [*v. Harris,* 489 U.S. 378, 109 S.Ct. 1197, 1203, 103 L.Ed.2d 412 (1989) ]. A direct causal link must exist between the acts of the governing body sought to be held liable and the alleged constitutional deprivation. *Id.* Such a causal connection may be established when the governing body has delegated its decision-making authority to the official whose illegal conduct caused the harm, *see Pembaur,* 475 U.S. at 485, 106 S.Ct. at 1301, or when the governing body retains its decision-making authority but exercises it with deliberate indifference to the constitutional rights of those affected by its decisions, *see City of Canton,* 109 S.Ct. at 1204–06; *Smith v. Rowe,* 761 F.2d 360, 368–69 (7th Cir.1985).

881 F.2d at 912–13.

And in *Starrett v. Wadley, supra,* an employment sexual harassment case brought under both Title VII and § 1983, we held that:

> Since *Monell,* the Supreme Court has explained that a municipality can be liable under Section 1983 for the acts of a municipal official only when the official possesses "final policymaking authority" to establish municipal policy with respect to the acts in question. *Pembaur v. City of Cincinnati,* 475 U.S. 469, 483, 106 S.Ct. 1292, 1300, 89 L.Ed.2d 452 (1986) ...; *City of St. Louis v. Praprotnik,* 485 U.S. 112, 108 S.Ct. 915, 924, 99 L.Ed.2d 107 (1988).... The Court in *Pembaur* and *Praprotnik* emphasized that municipal liability is limited to 'acts that are, properly speaking, acts "of the municipality"—that is, acts which the municipality has officially sanctioned or ordered.' *Pembaur,* 475 U.S. at 480, 106

S.Ct. at 1298; *see also Praprotnik,* 108 S.Ct. at 924.

876 F.2d at 818.

In *Specht v. Jensen,* 863 F.2d 700 (10th Cir.1988), a suit brought under § 1983 to recover damages resulting from an alleged illegal search of plaintiffs' home, we affirmed the district court's grant of a directed verdict for the city of Steamboat Springs on the ground that "in order for inaction to provide a basis for a city's liability, the inaction must be deliberate indifference, tacit approval of an offensive act." *Id.* at 702.

In *Watson v. City of Kansas City, Kan.,* 857 F.2d 690 (10th Cir.1988), we pointed out that in a § 1983 suit against the city, its police chief and various police officers, alleging deprivation of equal protection in failure to provide police protection:

> It is well settled that the city may be liable for the plaintiff's injuries only if she can establish that her injuries were the result of an unconstitutional municipal policy or custom. *City of Oklahoma City v. Tuttle,* 471 U.S. 808, 105 S.Ct. 2427, 85 L.Ed.2d 791 (1985); *Monell,* 436 U.S. at 691, 98 S.Ct. at 2036; .... The policy or custom need not be formal or written....

857 F.2d at 695.

In *Meade v. Grubbs,* 841 F.2d 1512, 1528 (10th Cir.1988), we held that a supervisor or the municipality may be liable in a § 1983 action brought for excessive use of force by the police "[w]here there is essentially a complete failure to train, or training that is so reckless or grossly negligent that future misconduct is almost inevitable."

■ In the case at bar, the City was dismissed from the action when the district court granted its motion for directed verdict at the close of the plaintiff's evidence. That meant, of course, that the district court found that no cause had been demonstrated to impose liability on the City. This finding was not challenged by Houston. The sufficiency of the evidence to create an issue of fact for the jury is solely a question of law. Fed.R.Civ.P., Rule 50(a); *Holter v. Moore And Co.,* 702 F.2d 854, 855 (10th Cir.), *cert. denied,* 464 U.S. 937, 104

S.Ct. 347, 78 L.Ed.2d 313 (1983). A "[d]irected verdict is proper only when the evidence is so patently in favor of the moving party that a jury verdict in favor of the opposing party would be improper and would have to be set aside by the trial judge." *Peterson v. Hager*, 724 F.2d 851, 853–54 (10th Cir.1984). *See also Koch v. City of Hutchinson*, 814 F.2d 1489, 1495 (10th Cir.1987), *rev'd in part on reh'g on other grounds*, 847 F.2d 1436 (10th Cir.) (*en banc*), *cert. denied*, 488 U.S. 909, 109 S.Ct. 262, 102 L.Ed.2d 250 (1988); *Thompson v. Kerr–McGee Refining Corp.*, 660 F.2d 1380, 1389 (10th Cir.1981). Without the City in the suit, Reich and McHam were being sued only in their individual capacities.

We must hold, then, that the court erred thereafter in entering the Order directing the City to pay and tender the judgments entered in this case. Once the City was dismissed from the action, there was no basis for assessing any § 1983 liability against it because Houston had failed to establish that a policy or custom of the City induced the officers' actions and that the officers were acting in an official capacity. We point out that even if the City had not been dismissed, it would not have been liable under federal law for the punitive damages. *City of Newport v. Fact Concerts, Inc.*, 453 U.S. 247, 101 S.Ct. 2748, 69 L.Ed.2d 616 (1981).

We hold that the district court erred in ordering the City to pay any of the damage awards entered against Reich and McHam.

### III.

The City contends that the district court erred in ruling that the Oklahoma Governmental Tort Claims Act applies because (a) the Act is not applicable to a civil rights action, and (b) even if the Act is applicable, the City cannot be liable because the jury found that the defendants Reich and McHam failed to act in reliance upon a good faith belief that their acts or omissions were reasonable and proper.

The Oklahoma Governmental Tort Claims Act, Okla.Stat. tit. 51, §§ 151 through 171, was originally enacted in 1978 as the Political Subdivision Tort Claims Act which this court in *Childers v. Independent School Dist. No. 1*, 676 F.2d 1338 (10th Cir.1982), recognized as a waiver of sovereign immunity conditioned on certain limitations and exceptions. In *Nguyen v. State*, 788 P.2d 962 (Okla.1990), the Oklahoma Supreme Court held that the scope of liability under the Act was limited to torts committed within the scope of employment where private persons or entities would be liable under the laws of the State of Oklahoma. In *Fuller v. Odom*, 741 P.2d 449 (Okla.1987), the court held that the Act is the exclusive remedy by which an injured plaintiff may recover from a governmental entity for its negligence, thereby abrogating any previously existing common-law right. And in *Gleason v. City of Oklahoma City*, 666 P.2d 786 (Okla.App.1983), the Court of Appeals of Oklahoma held that the Act must be read broadly to promote the object of the Act and to further justice.

At the time of the alleged violations, the Act provided the following:

A. Political subdivision, subject to procedural requirements imposed by statute, ordinance, resolution or written policy shall:

1. Provide a defense for any employee when liability is sought for any violation of property rights or any rights, privileges or immunities secured by the Constitution or laws of the United States when alleged to have been committed by the employee while acting within the scope of employment; and

2. Pay or cause to be paid any judgment entered against any employee and/or political subdivision or settlement agreed to by the political subdivision entered against any employee; and any costs or fees, for a violation of property rights or any rights, privileges or immunities secured by the Constitution or laws of the United States which occurred *while the employee was acting within the scope of employment.* (Emphasis supplied).

Okla.Stat. tit. 51, § 162. The Act also defined "scope of employment:"

'Scope of Employment' means performance by an employee *acting in good faith* within the duties of his office of employment or of tasks lawfully assigned by a competent authority but shall not include fraud or corruption. (Emphasis supplied).

Okla.Stat. tit. 51, § 152(8) (1981 & Supp. 1985) (currently recodified at Okla.Stat. tit. 51, § 152(9) (1981 & Supp.1990)).

 We hold that when Reich and McHam acted on October 31, 1984, they acted outside the scope of their employment because the jury rendered punitive damages against each of them, having found, as instructed, that their conduct "[a]mounted to gross negligence and willful and wanton conduct amounting to reckless disregard of plaintiff's [Houston's] rights." (R., Vol. II, p. 159). Thus, the trial court erred in its Order Granting Plaintiff's Motion for Orders Enforcing Judgment. Once the jury found that defendants Reich and McHam had acted willfully, wantonly and in reckless disregard of Houston's constitutional rights, the City was not liable under the Oklahoma Governmental Tort Claims Act and Reich and McHam forfeited their immunity from liability under the Act.

## IV.

City argues that because the trial court erred in ordering it to pay the punitive damage awards, the court also erred in not reducing the attorney fee award attributable to the punitive damage awards. City contends that "[e]ven if the City of Hugo under the Governmental Tort Claims Act, had some responsibility to pay actual damages awarded against the individual officers, the attorney fee award would be reduced to $13,359.23 because of Okla.Stat. tit. 51, § 162(D), which provides that the political subdivision is not required to pay that portion of attorney fees which, by percentage of the judgment, is attributable to punitive damages." (Brief of City, pp. 23–4).

 We acknowledge that the City is correct in its analysis on this question. However, that does not end our inquiry

because it is well established that attorney fee awards in 42 U.S.C. § 1983 actions are governed by federal law, rather than state law. 42 U.S.C. § 1988 provides that in any action to enforce a provision of § 1983, the court, in its discretion, may allow the prevailing party, other than the United States, a reasonable attorney fee as part of the costs.

In *Hensley v. Eckerhart*, 461 U.S. 424, 103 S.Ct. 1933, 76 L.Ed.2d 40 (1983), the Supreme Court held that plaintiffs may be considered prevailing parties if they succeed on any significant issue in litigation which achieves some of the benefit the parties sought in bringing suit. This court has held that even though the prevailing parties ·be awarded only nominal damages of one dollar, an award of $12,500 in attorney fees was not an abuse of discretion where the most important aspect of the judgment was the vindication of plaintiffs' civil rights. *Nephew v. City of Aurora*, 830 F.2d 1547 (10th Cir.1987) (*en banc*), *cert. denied*, 485 U.S. 976, 108 S.Ct. 1269, 99 L.Ed.2d 481 (1988). Because § 1988 is designed to vindicate federal constitutional and statutory rights, a prevailing plaintiff ordinarily should recover attorney's fees. *Smith v. Robinson*, 468 U.S. 992, 1006, 104 S.Ct. 3457, 3465, 82 L.Ed.2d 746 (1984).

A civil rights plaintiff proceeding under § 1983 must allege and prove, by a preponderance of the evidence, that (a) some person has deprived him of a federally protected right, and (b) the person who has deprived him of that right acted under color of state law, *Gomez v. Toledo*, 446 U.S. 635, 640, 100 S.Ct. 1920, 1923, 64 L.Ed.2d 572 (1980), and the defendant has the burden of pleading affirmative defenses such as immunity. *Id.*

 We hold that after the City was dismissed from this action at the close of Houston's case, there was no basis in law for the district court's subsequent Order directing that City and the Excise Board of Choctaw County, Oklahoma, levy and pay the judgments. Houston did not "prevail" against the City.

*Conclusion*

We reverse the district court's Order granting Houston's motion for orders enforcing the judgments, entered on June 10, 1988, (see R., Vol. I, Tab 18) and the Order of January 23, 1990, (*id.* at Tab 24) directing the City of Hugo and the Excise Board of Choctaw County, Oklahoma, to tax levy and pay the following:

1. The actual damages awarded Houston from Reich in sum of $4,800.00 together with punitive damages in sum of $5,200.00, with interest at 6% per annum from September 16, 1986.

2. The actual damages awarded Houston from McHam in sum of $1,200.00 together with punitive damages in sum of $1,300.00, with interest at 6% per annum from September 16, 1986.

3. Court costs in the sum of $477.92 with interest at 6% per annum awarded Houston from Reich and McHam from November 12, 1986.

4. Attorney fees awarded Houston from Reich and McHam in sum of $25,690.84 with interest at 6% per annum from December 3, 1986.

REVERSED and REMANDED.