Peter **CHARRON,** P.P.A., Jean Charron, P.P.A., Lianne Charron, P.P.A., and Karen Charron,

v.

Joseph **PICANO,** in his capacity as Director, Department for Children and Their Families, Michael Fraieli and The State of Rhode Island and Providence Plantations.

Civ. A. No. 91–0002–T.

United States District Court, D. Rhode Island.

Feb. 2, 1993.

Jeffrey S. Michaelson, Providence, RI, for plaintiffs.

Thomas M. Bohan, Chief Legal Counsel, Kevin J. Aucoin, Dept. of Children and Their Families, James R. Lee, Richard B. Woolley, Office of the Atty. Gen., Providence, RI, for defendants.

## MEMORANDUM AND ORDER

TORRES, District Judge.

This is a suit brought pursuant to 42 U.S.C. § 1983 by Jean and Karen Charron on their own behalf and on behalf of their minor children, Peter and Lianne. The defendants are Joseph Picano, the former Director of the Rhode Island Department for Children and Their Families ("DCF"); Michael Fraieli, a Child Protective Investigator employed by DCF; and the State of Rhode Island.

The gravamen of the complaint is that the Charrons were deprived of what they claim is their constitutional "liberty interest in the enjoyment of [their] family relations" when Fraieli caused Peter to be temporarily removed from the Charrons' home pending investigation of a report of possible child abuse. The complaint also contains pendent state law claims for false imprisonment and intentional infliction of emotional distress.

The case is presently before the Court for consideration of the Charrons' objection to a Magistrate Judge's Recommendations that the Court grant the defendants' motion for summary judgment with respect to the original complaint and deny the Charrons' motion for leave to file an amended complaint. For reasons hereinafter stated, the Court accepts the Magistrate Judge's Recommendations.

## FACTS

On Monday, July 16, 1990, Karen Charron brought her six year old son Peter to Dr. Norman Gauvin for treatment of injuries to Peter's face, buttocks and thigh. The nature of those injuries and Peter's statement that his father had hit him caused Dr. Gauvin to conclude that Peter may have been a victim of child abuse. Accordingly, Dr. Gauvin notified DCF of his suspicion and completed a DCF Physician's Report of Examination (the "Report") indicating probable child abuse.

Under Rhode Island law, a physician treating a child who appears to have been injured by other than accidental means may cause the child to be kept in a hospital or licensed child case facility for up to 72 hours, with or without parental consent, by completing a section of the Report provided for that purpose. R.I.Gen.Laws § 40–11–5(a) (1990). However, although Dr. Gauvin completed the section authorizing that Peter be kept for 72 hours, he added to the form the words "if deemed necessary by DCF."

When DCF received Dr. Gauvin's report, it assigned Fraieli to the case. Fraieli immediately interviewed Dr. Gauvin who described the bruises that he had observed on Peter's thigh and buttocks and noted that some of them appeared to be in the form of multiple handprints. Dr. Gauvin also informed Fraieli that Peter had a history of Fifth Disease, a condition known to cause markings on the body. However, he expressed the opinion that the bruises he observed on July 16th were not caused by Fifth Disease.

Later that day, Fraieli met with the Charrons at their home. It is undisputed that, at that time, Jean Charron acknowledged striking Peter on the buttocks on the Saturday preceding Dr. Gauvin's examination. Furthermore, Fraieli has submitted an uncontroverted affidavit that he was told by both of the Charron children that on July 14th, their father struck Peter and punched a hole in a closet door and that he hit Peter a lot. Peter also told Fraieli that he was hit so hard on the previous Saturday that he could not sit down.

Based on Dr. Gauvin's Report and his interviews with both Dr. Gauvin and the Charrons, Fraieli arranged to place Peter with relatives of the Charrons for 72 hours. After further investigation by another DCF case worker and consultation with DCF's legal counsel, Peter was returned home on July 19.

## PROCEDURAL POSTURE

The Charrons' complaint contains fourteen counts seeking money damages from the defendants. Eight of the counts assert claims under 42 U.S.C. § 1983 for alleged deprivations of the family's liberty interests without due process of law. The remaining counts assert state law claims for false imprisonment and intentional infliction of emotional distress. The complaint does not specify whether Picano and/or Fraieli are sued individually and/or in their official capacities as agents of DCF.

The Magistrate Judge concluded that Picano and Fraieli had been sued only in their official capacities. Accordingly, he recommended that those defendants' motions for summary judgment be granted with respect to the § 1983 claims on the ground that they were not "persons" within the meaning of the statute and that the pendent state law claims be dismissed for lack of jurisdiction. The Charrons objected to that recommendation, and while their objection was pending, they moved for leave to file an amended complaint.

The proposed amended complaint differs from the original complaint in two respects. First, the amended complaint explicitly names Fraieli as a defendant in both his individual and official capacities. Second, the amended complaint omits the demands for money damages against Picano pursuant to the § 1983 claims. Instead, it substitutes a demand for a declaration that R.I.Gen.Laws § 40–11–1 et seq. requires judicial review either before or after DCF removes a child from the home, or, in the alternative, that R.I.Gen.Laws § 40–11–1 et seq. is unconstitutional, and a demand for related injunctive relief.

The Magistrate Judge recommended denial of the motion to amend on the ground that the proposed amendment would require, in effect, that the case "begin anew" and, therefore, would unfairly prejudice the defendants. Specifically, the Magistrate Judge found that the Charrons had no evidence that Fraieli acted individually rather than in his official capacity. He further found that Fraieli had not been sued personally and would be unfairly prejudiced by now being required to defend himself in that capacity. Finally, he found that adding a challenge to the constitutionality of the Rhode Island statute would dramatically alter the case against Picano.

## STANDARDS OF REVIEW

Since, the defendants' motion for summary judgment was referred to the Magistrate Judge pursuant to 28 U.S.C. § 636(b)(1)(B) (1988), the Court must make a *de novo* determination with respect to those portions of the Magistrate Judge's Recommendation to which an objection has been made. 28 U.S.C. § 636(b)(1) (1988).

The motion to amend, on the other hand, was referred to the Magistrate Judge pursuant to § 636(b)(1)(A) (1988). Under that subsection, the Magistrate Judge's determination should be overturned only if "clearly erroneous or contrary to law." 28 U.S.C. § 636(b)(1)(A) (1988). *See e.g., Quaker State Oil Refining Corp. v. Garrity Oil Co.*, 884 F.2d 1510, 1517 (1st Cir.1989). However, because the Magistrate Judge denominated his action as a "Recommendation," the Court will review it, too, under the more stringent *de novo* standard.

## DISCUSSION

### I. *The Motion for Summary Judgment*

It is well settled that "neither a State nor its officials acting in their *official* capacities are 'persons' amenable to suit for *monetary damages* under 42 U.S.C. § 1983." *Will v. Michigan*, 491 U.S. 58, 71, 109 S.Ct. 2304, 2312, 105 L.Ed.2d 45 (1989) (emphasis added). The immunity thereby conferred on state officials is based on the recognition that "a suit against a state official in his or her official capacity is not a suit against the official

but rather is a suit against the official's office." *Id.*

However, even when acting in their official capacities, state officials are not insulated from suit for declaratory or injunctive relief. Official capacity actions for non-monetary or prospective relief are not treated as suits against the State. Therefore, for purposes of such actions, state officials *are* deemed "persons." *Id.* at 71 n. 10, 109 S.Ct. at 2311–12 n. 10 (citations omitted). By the same token, state officials sued in their *individual* capacities are considered "persons" regardless of the nature of the relief sought.

State officers sued for damages in their official capacity are not "persons" for purposes of the suit because they assume the identity of the government that employs them. By contrast, officers sued in their personal capacity come to court as individuals. A government official in the role of personal-capacity defendant thus fits comfortably within the statutory term "person."

*Hafer v. Melo,* —— U.S. ——, ——, 112 S.Ct. 358, 362, 116 L.Ed.2d 301 (1991) (citations omitted).

The Charrons concede that their original complaint cannot be construed as asserting a claim against Picano individually. However, they contend that it should be construed as asserting such a claim against Fraieli. The Court rejects that contention primarily because the Charrons did not specify that they were suing Fraieli individually. The complaint is silent as to whether the claims made against Fraieli were made against him in his official capacity or his personal capacity.

The Circuits are divided with respect to the consequences of a complaint's failure to specify the capacity in which a state official is sued. The Sixth and Eighth Circuits adhere to the view that a suit against a state official should not be construed as a personal capacity suit unless such a claim is clearly set forth in the pleadings. *Wells v. Brown,* 891 F.2d 591, 592 (6th Cir.1989); *Nix v. Norman,* 879 F.2d 429, 431 (8th Cir.1989). On the other hand, the Third, Seventh, Tenth and Eleventh Circuits look

to the course of the proceedings to make that determination. *See Houston v. Reich,* 932 F.2d 883, 885 (10th Cir.1991); *Melo v. Hafer,* 912 F.2d 628, 635 (3rd Cir.1990), *aff'd* —— U.S. ——, 112 S.Ct. 358, 116 L.Ed.2d 301 (1991); *Conner v. Reinhard,* 847 F.2d 384, 394 n. 8 (7th Cir.), *cert. den.,* 488 U.S. 856, 109 S.Ct. 147, 102 L.Ed.2d 118 (1988); *Lundgren v. McDaniel,* 814 F.2d 600, 604 (11th Cir.1987).

Although the question is one of first impression in the First Circuit, it appears to this Court that the "bright line" rule adopted by the Sixth and Eighth Circuits is preferable for a number of reasons. First, it enables the litigants and the Court to determine with certainty and without any need for additional proceedings the capacity in which state officials are purportedly sued. Because that determination may affect such matters as the nature of the defenses that may be asserted, the availability of insurance coverage and whether there are potential conflicts of interest that might require separate representation of defendants, it is important that the litigants be able to make that determination at the inception of litigation. Furthermore, requiring a claimant to specify whether an official is being sued individually does not place any undue burden on the claimant. It requires nothing more than that a plaintiff clearly state what he or she means. Since the complaint in this case fails to specify that a claim is being asserted against Fraieli personally, it should be construed as a suit against him in his official capacity only.

The result would be no different even if the more generous standard adopted by the Third, Seventh, Tenth and Eleventh Circuits is utilized. The record is devoid of any facts or allegations suggesting that Fraieli acted outside the scope of his official duties. On the contrary, it indicates that he was assigned to investigate Dr. Gauvin's Report and that the actions he took were both well within the parameters of his official responsibilities and supported by the available facts. Although it might be argued, in retrospect, that Fraieli's action was incorrect, the Charrons have

failed to identify any way in which Fraieli can be said to have acted outside the scope of his official duties or used the powers of his office for improper purposes which are the touchstones for personal liability of a State official under § 1983.

Having determined that the original complaint asserts claims against Picano and Fraieli only in their official capacities, it follows that they are not "persons" and that the defendants' motion for summary judgment with respect to the § 1983 claims against them should be granted.

## II. *The Motion to Amend*

The Charrons seek to avoid summary judgment by moving to amend their complaint. As already noted, the proposed amendment would name Fraieli as a defendant in his personal capacity and would assert claims for declaratory and injunctive relief against Picano.

Fed.R.Civ.P. 15(a) requires that, once litigation has progressed to the point that an answer has been filed "a party may amend the party's pleading only by leave of court or by written consent of the adverse party." Fed.R.Civ.P. 15(a). However, the rule directs that "leave shall be freely given when justice so requires." *Id.* Applying that standard, courts have identified a number of factors that may preclude permission to amend. In *Foman v. Davis*, 371 U.S. 178, 83 S.Ct. 227, 9 L.Ed.2d 222 (1962), the Supreme Court alluded to some of those factors, as follows:

> In the absence of any apparent or declared reason—such as undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of amendment, etc.—the leave sought should, as the rules require, be "freely given."

*Foman*, 371 U.S. at 182, 83 S.Ct. at 230.

### A. *The Claims Against Fraieli*

■ The Charrons argue, with some justification, that their delay in seeking to amend their complaint against Fraieli and any prejudice caused by that delay was due, in part, to the fact that Fraieli's motion for summary judgment raising the issue of the capacity in which he was sued was not filed until nearly nine months after suit was commenced. Nevertheless, even if the prejudice visited upon Fraieli is self-imposed, the proposed amendment should not be allowed because it amounts to nothing more than an exercise in futility.

■ As indicated in *Foman*, futility is one ground for denying a motion to amend a pleading. *Id.* The First Circuit, relying on *Foman*, has stated that where an amendment "would serve no legitimate purpose, the district court should not needlessly prolong matters." *Correa–Martinez v. Arrillaga–Belendez*, 903 F.2d 49, 59 (1st Cir.1990).

■ In this case, it seems clear that the doctrine of qualified immunity would insulate Fraieli from the personal liability claims the Charrons seek to assert in their proposed amended complaint. Qualified immunity precludes suits for money damages against state officials performing discretionary tasks "insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982). As the Supreme Court has stated:

> where an official's duties legitimately require action in which clearly established rights are not implicated, the public interest may be better served by action taken "with independence and without fear of consequences."

*Harlow*, 457 U.S. at 819, 102 S.Ct. at 2739 (quoting *Pierson v. Ray*, 386 U.S. 547, 554, 87 S.Ct. 1213, 1217, 18 L.Ed.2d 288 (1967)).

Qualified immunity is designed both to insure that government officials are not deterred from performing their duties by the threat of personal liability and to prevent them from being burdened or distracted by the litigation process itself. Thus, it has been described as "an *immunity from suit* rather than a mere defense to liability [which] ... is effectively lost if a case is erroneously permitted to go to trial."

*Mitchell v. Forsyth,* 472 U.S. 511, 526, 105 S.Ct. 2806, 2815, 86 L.Ed.2d 411 (1985) (emphasis in original). For that reason, denial of a motion for summary judgment on qualified immunity grounds may be the subject of an interlocutory appeal. *Id.*

■ The test for determining whether the doctrine of qualified immunity shields a government official from personal liability is an objective one. It requires a determination as to whether the right allegedly infringed was clearly established at the time the conduct occurred and whether a reasonable person should have known that the conduct in question violated that right. *Mitchell,* 472 U.S. at 524, 105 S.Ct. at 2814; *Harlow,* 457 U.S. at 818, 819, 102 S.Ct. at 2738, 2739.

In this case, the right that the Charrons allege was infringed is their right to "the enjoyment of family relations." However, as the First Circuit has pointed out, the parameters of that right are sometimes far from clear because of competing interests among family members and between parental rights and the State's interest in "the health, education and welfare of children as future citizens." *Frazier v. Bailey,* 957 F.2d 920, 930 (1st Cir.1992). As the *Frazier* court so succinctly put it:

Because this interest [in familial relationships] must always be balanced against the governmental interest involved, it is difficult, if not impossible, for officials to know when they have violated "clearly established" law.

*Frazier,* 957 F.2d at 931 (citations omitted).

The State's interest is especially compelling and the parents' right to preservation of the family unit is correspondingly less clear in a situation where there is good reason to suspect that child abuse has occurred. The difficulty in clearly delineating familial rights under such circumstances is compounded in this case because Rhode Island law specifically provides for the temporary removal of a child from the home upon certification by a physician that the child has sustained injuries through other than accidental means. Furthermore, the statute exonerates state officials from liability for acting on such certifica-

tion. *See Curtis v. State Dept. for Children and their Families,* 522 A.2d 203 (R.I.1987).

Of course, that does not mean that state officials may remove children from their homes with impunity. It does mean that, when there is substantial cause to believe that child abuse has occurred, the boundaries of parental rights may become so blurred that state officials cannot reasonably be expected to know the precise parameters of those rights and, therefore, should be afforded some latitude before being subjected to personal liability for acting pursuant to their official duties.

In this case, the report by Dr. Gauvin and the statements obtained from the Charron children provided ample justification for concern with respect to Peter's welfare. Consequently, by temporarily removing Peter, Fraieli did not violate any "clearly established right" of the Charrons. By the same token, the Report and subsequent statements by Dr. Gauvin and the Charrons make it clear that Fraieli acted in an objectively reasonable manner; or, to put it another way, that a reasonable person would not have viewed his conduct as violating any clearly established rights of the Charrons. As already noted, Dr. Gauvin reported bruises on various parts of Peter's body, some of which were in the form of handprints, and he completed that portion of the statutory form authorizing that Peter be taken into custody for 72 hours. In addition, Jean Charron admitted striking his son on the preceding Saturday, and both Charron children stated that their father hit Peter a lot. Under those circumstances, it was perfectly reasonable for Fraieli to believe that temporary removal of Peter from the Charron home was justified under R.I.Gen.Laws § 40–11–5.

### B. *The Claims Against Picano*

■ The amended claims that the Charrons seek to assert against Picano appear to be motivated more by a desire to provide a vehicle for recovering attorneys fees under § 1988 than by a desire to obtain any meaningful relief for the alleged deprivation in question. As already noted, the

proposed amended complaint seeks a declaration that R.I.Gen.Laws § 40–11–1 requires judicial review when children are temporarily removed from their homes, or alternatively, that the statute is unconstitutional. It further seeks an injunction that would prohibit the director of the Department of Children and their Families from interfering with the Charrons' right to enjoy their "family harmony." *See e.g.,* Amended Compl. at ¶ 21.

Since Peter was returned to the Charrons' home sometime ago, it is difficult to see how such relief would provide any redress for the deprivation alleged by the Charrons. More importantly, the absence of any allegations or facts suggesting any likelihood that the incident may be repeated deprives the Charrons of standing to seek such relief.

■ The requirement of standing is rooted in the constitutional principle that a federal court may only decide actual cases and controversies. *American Postal Workers Union v. Frank,* 968 F.2d 1373, 1374 (1st Cir.1992) (citing *Allen v. Wright,* 468 U.S. 737, 750, 104 S.Ct. 3315, 3324, 82 L.Ed.2d 556 (1984). A party has standing to sue in federal court if he or she can prove: (1) that he or she "personally has suffered some actual or threatened injury as a result of the putatively illegal conduct of the defendant;" (2) that the injury is "fairly trace[able] to the challenged action;" and (3) that the injury "is likely to be redressed by a favorable decision." *Valley Forge Christian College v. Americans United for Separation of Church & State, Inc.,* 454 U.S. 464, 472, 102 S.Ct. 752, 758, 70 L.Ed.2d 700 (1982) (citations omitted).

■ Although a past injury may confer standing to seek money damages, it does not ordinarily confer standing to seek declaratory or injunctive relief unless the plaintiff demonstrates a " 'sufficient likelihood that he will again be wronged in a similar way.' " *See American Postal Workers Union,* 968 F.2d at 1376 (quoting *Los Angeles v. Lyons,* 461 U.S. 95, 111, 103 S.Ct. 1660, 1670, 75 L.Ed.2d 675 (1983)). The mere fact that plaintiff may be able to prove that *someone* may suffer a similar wrong in the future is insufficient to confer standing. As the First Circuit has said, "[n]othing in the relevant caselaw suggests that guaranteed repetition of the injury to *someone* lessens the need for a particularized dispute between the plaintiff and defendant." *American Postal Workers Union,* 968 F.2d at 1377 (emphasis in original). In this case, there has been no showing of any likelihood that Peter will be removed from his home again. Consequently, the Charrons lack standing to seek the type of declaratory and/or injunctive relief requested.

In addition, the Charrons' attempt to now assert such claims is both untimely and unfairly prejudicial to the defendants. Unlike the claim against Fraieli, the delay of fourteen months in asserting these claims cannot be attributed to any lack of diligence by the defendants. The infirmities in the Charrons' case that induced them to seek to amend their complaint against Picano have been apparent from the inception of this litigation. The Charrons have not offered any explanation for their failure to raise this issue in a more timely fashion. Moreover, the proposed amendment so radically alters the nature of the claims against Picano that it would unfairly prejudice him. It focuses on the interpretation and constitutionality of the statute rather than the reasonableness of Fraieli's actions and Picano's vicarious liability. Consequently, it raises completely new and different issues that would require Picano to prepare a new defense, to incur additional expenses and to suffer further delay in obtaining a resolution of this matter. In light of the Charrons' tardiness in moving to amend and their apparent lack of standing to request equitable relief, such additional expense and delay would unfairly prejudice Picano.

In sum, the Court finds that the Magistrate Judge was correct in recommending denial of the Charrons' Motion to Amend.

### C. *Pendent State Law Claims*

The only other matter to be resolved is the defendants' motion to dismiss the pen-

dent state law ·claims for false imprisonment and intentional infliction of emotional distress. As the Magistrate Judge indicated, the Supreme Court's decision in *United Mine Workers v. Gibbs* is dispositive. In *Gibbs*, the Supreme Court stated that

> [n]eedless decisions of state law should be avoided both as a matter of comity and to promote justice between the parties, by procuring for them a surer-footed reading of applicable law. Certainly, if the federal claims are dismissed before trial, even though not insubstantial in a jurisdictional sense, the state claims should be dismissed as well.

*United Mine Workers v. Gibbs*, 383 U.S. 715, 726, 86 S.Ct. 1130, 1139, 16 L.Ed.2d 218 (1966). In this case, there is no reason for the Court to decide claims based entirely on state law when there are no viable federal claims.

### CONCLUSION

For all the foregoing reasons, the Charrons' appeals from the Magistrate Judge's Reports and Recommendations are denied, and the clerk is directed to enter judgment in favor of all defendants with respect to Counts I through VIII of the Complaint and also dismissing · Counts IX through XIV without prejudice.

IT IS SO ORDERED.