PRIDE CHRYSLER PLYMOUTH, INC.,
and Blackstone Subaru, Inc., d/b/a
Blackstone Subaru, Plaintiffs,

v.

RHODE ISLAND MOTOR VEHICLE
DEALERS' LICENSE
COMMISSION, Defendant.

Civ. A. No. 88–0298 L.

United States District Court,
D. Rhode Island.

Sept. 6, 1989.

Patrick Quinlan, Providence, R.I., for plaintiffs.

Robin Davis, Office of the Atty. Gen., Providence, R.I., for defendant.

## MEMORANDUM AND ORDER

LAGUEUX, District Judge.

This matter is presently before the Court for decision after a bench trial. The plaintiffs, two Massachusetts corporations engaged in the automobile dealership business, Pride Chrysler–Plymouth, Inc. and Blackstone Subaru, Inc., have sued the Rhode Island Motor Vehicle Dealers' License Commission, ("Commission") a state agency charged with regulating automobile dealerships, for inducing a local newspaper to refuse to run an automobile advertisement. The alleged interference with their advertisements, plaintiffs claim, violated their civil rights to free speech and due process of law, tortiously interfered with a contractual relationship and thus transgressed state law, and constituted a violation of the Sherman Antitrust Act.

## BACKGROUND

The plaintiffs in this action are corporations operating two Massachusetts car dealerships. These two entities are controlled by Al Anjos Enterprises, Inc. ("Anjos") which also controls other corporations operating Rhode Island car dealerships. Initially, Anjos and the Rhode Island dealerships it operates were also plaintiffs in this suit; however, at trial, they were voluntarily dismissed from this action. Thus, only the two Massachusetts entities remain as parties herein.

The defendant Commission is an agency of the State of Rhode Island created pursuant to Rhode Island General Laws, Section 31–5–3. The State established the Commission in order to regulate automobile dealerships. While the Commission consists of eleven members, nine of them are licensed automobile dealers.

In early 1988, plaintiffs and the other Anjos dealerships developed and implemented a new advertising campaign entitled "You Clip It—We'll Beat It." The message presented by this promotion was that these dealerships would beat any other dealer's advertised price on a car. Through newspaper, radio and television spots, plaintiffs challenged consumers to clip other dealer's advertisements out of newspapers and then bring their clippings to plaintiffs for a better price.

Before running their new campaign, plaintiffs discussed their concept with the Rhode Island Attorney General's office and were informed that the "You Clip It—We'll Beat It" marketing strategy presented no legal problems. Furthermore, one of plaintiffs' representatives testified that she believed she had cleared the advertising approach with the Commission's chief investigator, Earl Gurjian, by telephone; however, Gurjian did not recall any such discussion.

Plaintiffs' "You Clip It—We'll Beat It" advertisements first appeared in the Providence Journal Bulletin ("Journal") on February 7, 1988. The Journal ran the advertisements for several weeks and then received a call from Chief Investigator Gurjian. After this communication, the Journal refused to carry future "You Clip It—We'll Beat It" advertisements that were subsequently submitted by plaintiffs.

In response, on May 11, 1988, plaintiffs filed the instant four-count complaint against the Commission and John Does 1 through 20. At the time of filing, plaintiffs sought a temporary restraining order and a preliminary injunction barring the "Defendants" and their agents, employees and all those acting in cooperation with them from interfering with the placement of plaintiffs' advertisements in the Journal or any other publication during the pendency of the present action. On May 13, 1988 this Court denied plaintiffs request for a temporary restraining order, but on June 6, 1988 granted their request for a preliminary injunction. Subsequently, plaintiffs have not identified any party as a John Doe and thus the Commission is now the only defendant to this suit.

Counts I and II of plaintiffs' complaint allege that the Commission deprived plaintiffs of their rights to free speech and due process of law in violation of 42 U.S.C. § 1983 and the First and Fourteenth

Amendments of the United States Constitution. Count I alleges that this deprivation was done intentionally, while Count II claims that the Commission negligently violated plaintiffs' rights. In Count III, plaintiffs claim that the Commission, in violation of Rhode Island state law, tortiously interfered with their contractual relationship with the Journal. Finally, Count IV is a federal antitrust claim through which plaintiffs assert that the activity of the Commission in interfering with their marketing scheme constituted "a contract, combination and conspiracy in restraint of interstate trade and commerce in direct violation" of Section 1 of the Sherman Antitrust Act, 15 U.S.C. § 1.

On May 11, 1989 the parties commenced a non-jury trial in this case. The trial consumed portions of three days and at the end of final arguments, the Court took the matter under advisement and gave counsel time in which to submit post-trial memoranda. Having heard the testimony, read the exhibits and studied the post-trial memoranda, this Court now makes the following determinations.

## DETERMINATIONS

The Commission has an established practice for handling allegedly improper automobile dealership advertisements. That procedure was not followed herein by the Commission's chief investigator, Earl Gurjian. However, the Commission itself took no action at all leading to the Journal's rejection of plaintiffs' "You Clip It—We'll Beat It" advertisements. Gurjian's successful effort to convince the Journal to ban the Massachusetts plaintiffs' advertisements was a wildcat action undertaken—not in accordance with a custom, practice or direct instruction of the Commission—but solely on his own initiative. Since plaintiffs did not sue Gurjian but only the Commission which did not do anything leading to the advertisement ban, plaintiffs' action fails.

As an aside, after the completion of trial, plaintiffs filed a motion to add Gurjian as an additional defendant to their suit. Such an addition at this very late date in the proceedings would clearly be prejudicial and unfair to Gurjian for he has had no opportunity to defend himself in this litigation. It must, therefore, be denied. However, plaiantiffs are free to file a separate action against Gurjian if they wish.

According to the testimony elicited during trial, the Commission deals with improper automobile advertisements in the following manner. Gurjian is the Commission's chief investigator and he is responsible for insuring that deceptive and unfair advertisements by Rhode Island automobile dealers are prohibited. Gurjian, in theory, reports to the Commission's Executive Secretary, John E. Cardarelli, who in turn reports to the Commission. During the time relevant to the rejection of plaintiffs' advertisements, Cardarelli was in Florida. It appears that the lines of command in the Commission's internal structure are rather blurred and that Gurjian often reports directly to the Commissioners themselves.

In the typical case, when Gurjian learns of an advertisement that he feels violates the Commission's rules, he will first call the dealer involved and ask him to pull the advertisement. In some instances the dealer might first receive a letter from the Commission informing him of the alleged violation. In either case, the dealer is informed of the particular section of the rules that he is allegedly transgressing. If the dealer then refuses to change his advertisement a hearing before the Commission will be held and if he is found in violation, a fine might be levied.

In addition to this procedure, Gurjian testified that he had established a "regular line of communication" with the Journal. This relationship germanated through the initiative of the newspaper. As Gurjian understood the situation, the Journal began contacting his office after dealers complained that the paper allowed some dealers to run advertisements that ran afoul of the Commission's rules. The Journal's advertising sales development manager, Richard Murray, testified that it was his company's policy not to run advertisements that violate the Commission's regulations. Yet

Gurjian maintained that he never told the newspaper to pull an advertisement.

Gurjian was somewhat equivocal about whether the Commissioners knew of his practice of calling the Journal. Apparently, Gurjian believed that the Commission was aware of his line of communication with the paper. A number of Commissioners testified at trial, and some stated that they knew Gurjian had a relationship with the Journal while others said that they were ignorant of this fact. All witnesses testified, however, that no Commissioner knew of Gurjian's call to the Journal concerning plaintiffs' advertisements, nor were any of them aware that Gurjian ever challenged advertisements run by Massachusetts dealerships.

Getting back to the facts of this case, Gurjian testified that he first learned of plaintiffs' marketing scheme through an anonymous tip. Someone mailed Gurjian a copy of the "You Clip It—We'll Beat It" advertisement from the Journal. Gurjian testified that he believed the advertisement violated a Commission advertising regulation that reads: "Unsupported selling claims are viewed as not in the public interest and shall not be used because it is obvious that no dealer can be fully informed about every competitor's prices at all times." Therefore, Gurjian decided on his own to take action.

Since plaintiffs are not Rhode Island dealerships, Gurjian testified that he knew he had no jurisdiction over them. Apparently for this reason, Gurjian did not contact these dealerships as he would have done were they Rhode Island dealerships and were he following normal Commission procedures. Instead, Gurjian contacted Murray of the Journal.

A dispute exists as to exactly what was said during the Gurjian/Murray telephone conversation concerning plaintiffs' advertisement. Gurjian adamantly claims that he did not demand that the Journal cancel the "You Clip It—We'll Beat It" campaign. Instead, Gurjian maintains, he merely told Murray that the advertisements might violate the Commission's rules and that Murray might want to review them. Murray

testified that Gurjian did not "ask us not to run the ad," but "requested us not to run it." Murray also testified that the decision not to run the advertisements was a Journal decision made after consulting their attorneys. However, he further stated that he would not have pulled the advertisements had it not been for Gurjian's telephone call. Finally, Murray testified that he was never contacted by a Commissioner, or by any member of the Commission other than Gurjian concerning plaintiffs' advertisements.

Whatever words were used by Gurjian in his conversation with Murray, it is clear that at least his implicit message was that the Journal should not run the "You Clip It—We'll Beat It" promotion. That is the reason, after all, that Gurjian called Murray concerning the advertisement.

Under questioning from the Court, Gurjian admitted that he knew he had no jurisdiction over the Massachusetts dealerships but never so informed the Journal. Moreover, Gurjian testified that he never discussed the "You Clip It—We'll Beat It" campaign with any of the Commissioners after he spoke with Murray.

The Journal then notified plaintiffs' dealerships by telephone and letter that it would no longer accept the "You Clip It—We'll Beat It" advertisements. This occurred on or about March 15, 1988. The letter stated that plaintiffs' advertisements were "unacceptable" as "a matter of policy;" however, the letter did not say whose "policy" was involved—the Journal's or the Commission's. Alfredo dos Anjos, the principal of the plaintiffs, testified that he was orally told by Murray that the advertisements were barred due to a call from the Commission. Therefore, dos Anjos immediately called the Commission to ask for an explanation and a hearing. Gurjian testified that he had not given notice to plaintiffs prior to contacting the Journal. Subsequently, plaintiffs cancelled the "You Clip It—We'll Beat It" campaign in all media.

On April 4, 1988, the Commission notified plaintiffs that a hearing would be held regarding the "You Clip It—We'll Beat It"

matter on April 12, 1988. Yet on April 11, 1988, according to Gurjian, plaintiffs' counsel called to say that plaintiffs would not attend the meeting. Plaintiffs then filed suit and obtained the aforementioned preliminary injunction; however, despite the injunctive relief, plaintiffs did not resume their "You Clip It—We'll Beat It" promotion in any media. Instead, they began to run other, replacement forms of advertisement.

In terms of relief, through their post-trial memorandum, plaintiffs pray for damages in an amount equal to the costs they incurred in running the "You Clip It—We'll Beat It" campaign. In addition, they seek a permanent injunction against the Commission designed to prevent its employees from contacting the Journal about newspaper advertisements by car dealerships in the future.

### DISCUSSION

After a quick perusal of the Eleventh Amendment immunity issue presented by this case, the Court will discuss plaintiffs' four counts seriatum. These consist of two § 1983 civil rights claims, a charge of tortious interference with contract, and a federal antitrust cause of action.

The Commission is not liable in damages to plaintiffs for several reasons. First, the Commission is not a "person" which may be sued under § 1983. Second, plaintiffs have not shown that the Commission did anything that could possibly cause it to be liable. Gurjian's telephone call was a wildcat action and plaintiffs have not alleged that the Commission is liable under the doctrine of respondeat superior. Moreover, it is unclear if Rhode Island has waived its Eleventh Amendment immunity from employer liability for the intentional torts of its employees. Third, plaintiffs have failed to demonstrate the existence of an ongoing contractual relationship between themselves and the Journal with which the Commission could have interfered. Fourth, plaintiffs have not proven that the Commission had the necessary market power required to subject it to antitrust liability, and, in any event, plaintiffs

have failed to prove that they sustained quantifiable damages.

### A. Eleventh Amendment Immunity

■ As a threshold matter, this Court must determine whether it has jurisdiction over this suit. The plain language of the Eleventh Amendment to the United States Constitution clearly seems to state that jurisdiction does not exist in matters such as the present one. The Eleventh Amendment reads:

> The Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State.

The instant matter seems to be the classic case where the Eleventh Amendment bars suit in a federal court. Here, the plaintiffs, citizens of another state (Massachusetts), have brought suit in federal court against the State of Rhode Island seeking legal and equitable relief. Since the Eleventh Amendment patently appears to be a jurisdictional act, and since defects in jurisdiction cannot be waived by the parties to an action, *Mitchell v. Maurer*, 293 U.S. 237, 244, 55 S.Ct. 162, 165, 79 L.Ed. 338 (1934), it appears that the case cannot go forward in this Court. As an aside, there is no doubt here that plaintiffs have, in fact (and in law), sued the State of Rhode Island by suing a commission of the State of Rhode Island. *Vanlaarhoven v. Newman*, 564 F.Supp. 145 (D.R.I.1983); *Rhode Island Affiliate Am. Civil Liberties, Union Inc. v. Rhode Island Lottery Comm'n*, 553 F.Supp. 752 (D.R.I.1982); *see also Employees v. Department of Public Health and Welfare*, 411 U.S. 279, 93 S.Ct. 1614, 36 L.Ed.2d 251 (1973).

Without delving too deeply into the morass of Eleventh Amendment jurisprudence, the Court now makes two general observations. The first is that the Eleventh Amendment, as construed by the United States Supreme Court, bears little if any similarity to the language of the Eleventh Amendment as written. *See generally Pennsylvania v. Union Gas Company*,

— U.S. ——, 109 S.Ct. 2273, 105 L.Ed.2d 1 (1989) (Stevens, J., concurring). The second observation that may be helpful in slogging through this area of the law is that the Eleventh Amendment, as it currently exists, may most accurately be thought of as a constitutional grant of sovereign immunity from suit to the states. This grant can be abrogated, however, by an explicit act of the United States Congress in reliance on the Commerce Clause of the Constitution. *See, e.g., Pennsylvania v. Union Gas Co.,* —— U.S. ——, 109 S.Ct. 2273, 105 L.Ed.2d 1 (1989). (In such a case, Congress is actually amending—or perhaps overruling—a portion of the Constitution by statute.)

In the early part of the 19th century, the Supreme Court held that a state could waive its Eleventh Amendment immunity and subject itself to suit in a federal court. *Briscoe v. Bank of Commonwealth,* 36 U.S. (11 Pet.) 257, 9 L.Ed. 709, 9 L.Ed. 928 (1837). The Rhode Island Supreme Court has held that, by statute, Rhode Island has broadly waived Elelventh Amendment immunity from suit in federal court. *Laird v. Chrysler Corp.,* 460 A.2d 425 (R.I.1983). Rhode Island General Law Section 9–31–1 provides in part:

> The state of Rhode Island and any poilitical subdivision thereof, including all cities and towns, shall ... hereby be liable in all actions of tort in the same manner as a private individual or corporation; Provided however, That any recovery in any such action shall not exceed the monetary limitations thereof set forth in the chapter.

Therefore, the Eleventh Amendment does not bar plaintiffs' action against the Commission.

### B. The § 1983 Civil Rights Claims

██ Plaintiffs' civil rights claims fail because the Commission is not a proper defendant under 42 U.S.C. § 1983. Plaintiffs filed Counts I and II of their complaint pursuant to § 1983. Section 1983 provides in relevant part:

> Every *person* who, under color of any [state law] subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any [Constitutional rights] shall be liable to the party injured....

(emphasis added).

In the recent case of *Will v. Michigan Department of State Police,* —— U.S. ——, 109 S.Ct. 2304, 105 L.Ed.2d 45 (1989), the United States Supreme Court held that "neither a state nor its officials acting in their official capacities are 'persons' under § 1983." *Id.* at ——, 109 S.Ct. at 2312. Here plaintiffs have sued a commission of the State of Rhode Island. Under *Will,* the Commission is not a "person" for purposes of § 1983. Therefore, the Commission is not, and cannot be, liable under Counts I and II of the complaint for damages.

██ In addition, no injunction should issue against the Commission under § 1983 because it, as a Commission, did nothing wrong in the past and also does not threaten to do anything wrong in future vis a vis plaintiffs. In any event, the Commission cannot be held responsible for the actions of its employees under the doctrine of respondeat superior under § 1983. *Polk County v. Dodson,* 454 U.S. 312, 102 S.Ct. 445, 70 L.Ed.2d 509 (1981).

In short, under any view of this case, plaintiffs have no viable 1983 cause of action against the Commission.

### C. Tortious Interference With Contract

██ Through Count III of their complaint, plaintiffs maintain that the Commission tortiously interfered with an alleged contractual relationship between plaintiffs and the Journal. Plaintiffs claim fails for several reasons. First, plaintiffs have not established that their dealerships had an ongoing contractual relationship with the Journal that could have been interfered with by the Commission. Second, plaintiffs have failed to prove that the Commission had anything to do with the Journal's refusal to accept further "You Clip It—We'll Beat It" advertisements. Gurjian's telephone call to the Journal concerning plaintiffs' campaign was an unauthorized action undertaken by the Chief Investigator with-

out the Commission's knowledge. Finally, it is unclear if Rhode Island has waived Eleventh Amendment immunity in cases where the state could be liable under the doctrine of respondeat superior for an *intentional* tort committed by one of its employees.

Plaintiffs claim that the Commission interfered with a contractual relationship between their dealerships and the Journal. However, the evidence at trial demonstrated that the Journal and plaintiffs did not enjoy an ongoing contractual relationship. To the contrary, the Journal and plaintiffs operated on a "pay as you go" basis in running automobile advertisements. Rather than have one long term contract under which the Journal periodically ran plaintiffs compaigns, the parties operated week to week. Plaintiffs would submit advertisements to be run on designated days during a week and then be billed accordingly. Each of these weekly agreements constituted a separate contract.

In this case, even if Gurjian's contact with the Journal, induced it to refuse to contract in the future to run new "You Clip It—We'll Beat It" advertisements, he did not interfere with an existing contract. The contracts between the Journal and plaintiffs had already been performed and were over. Plaintiffs got what they contracted for under these periodic agreements and were not harmed under those contracts by Gurjian's interference.

On the other hand, plaintiffs may have enjoyed an advantageous business relationship with the Journal of which the periodic contracts formed a part. It might be that Gurjian tortiously interfered with an advantageous business relationship under Rhode Island State law—if one did in fact exist. However, that issue is not before the Court.

As stated earlier, plaintiffs have not shown that the Commission took any action resulting in the Journal's refusal to accept their "You Clip It—We'll Beat It" advertisements. Therefore, even if plaintiffs and the Journal had an ongoing contractual relationship with which Gurjian tortiously

interfered, the Commission would not be directly liable.

An interesting question exists as to whether the Commission could be liable for the intentional torts of its employees under the doctrine of respondeat superior. The crux of the issue is whether the Rhode Island General Assembly, in promulgating General Law § 9–31–1, intended to make the state liable for the intentional torts of its employees acting within the scope of their employment by waiving Eleventh Amendment and sovereign immunity. For example, did the General Assembly intend to subject the state to liability where a state employee slanders, libels, or assaults and batters someone?

As previously noted, the Rhode Island Supreme Court has held that § 9–31–1 constitutes a broad waiver of sovereign immunity, including Eleventh Amendment immunity. *Laird v. Chrysler Corp., supra.* Moreover, in *Saunders v. State,* the Court held that pursuant to § 9–31–1 the state can be liable in tort as an employer under the doctrine of respondeat superior. 446 A.2d 748, 752 (R.I.1982). Under Rhode Island law, an employer can be held liable for an intentional tort committed by his employee only if the conduct occurred while the employee was performing a duty in the course of his employment and by express or implied authority from the employer. *Drake v. Star Market Co.,* 526 A.2d 517 (R.I.1987). Yet, to date, the Rhode Island Supreme Court has not determined whether the General Assembly intended to subject the state to liability for the intentional torts of its employees. However, since plaintiffs have failed to present a case under the doctrine of respondeat superior and because they have not proven the existence of a continuing contractual relationship, the Court need not decide the respondeat superior/intentional tort, waiver issue.

### D. Antitrust

■ Plaintiffs allege that the Commission has violated Section 1 of the Sherman Antitrust Act. 15 U.S.C. § 1. Yet, plaintiffs have failed to show that the Commission took *any* action which adversely af-

fected plaintiffs in this matter. As previously noted, Gurjian acted alone in contacting the Journal. Moreover, at trial, plaintiffs failed to prove damages or to show that the Commission had sufficient market power necessary to restrain trade. Finally, and most strikingly, plaintiffs have not demonstrated the existence of a contract, combination or conspiracy to restrain trade. For these reasons, plaintiffs' antitrust claim fails.

## CONCLUSION

For the reasons stated herein, the Court holds that the Commission is not liable to plaintiffs in this matter. In addition, plaintiffs motion to add Earl Gurjian as a defendant in this case is denied. The Clerk will enter judgment for the defendant forthwith.

*It is so Ordered.*