Rhoda TANG, Plaintiff,

v.

STATE OF RHODE ISLAND, DEPART-
MENT OF ELDERLY AFFAIRS, Mau-
reen Maigret, in her individual and offi-
cial capacity as Director of Department
of Elderly Affairs, and Susan Sweet, in
her individual and official capacity as
Associate Director of Department of El-
derly Affairs, Defendants.

Civ.A. No. 95–046 P.

United States District Court,
D. Rhode Island.

Aug. 21, 1995.

Marc Gursky, Fidelma L. Fitzpatrick, Providence, RI, for plaintiff.

Rebecca T. Partington, Jametta O. Alston, Thomas A. Palombo, R.I. Attorney General's Office, Providence, RI, for defendants.

**MEMORANDUM AND ORDER**

PETTINE, Senior District Judge.

This an action alleging employment discrimination based on race, color and national origin. Plaintiff is an Asian–American female employed as a Public Health Nutritionist by the Department of Elderly Affairs (the "DEA"). Plaintiff alleges that the State, through the DEA, and its Director and Associate Director, have deprived her of rights guaranteed by the Constitution and laws of the United States and Rhode Island. A copy of the Complaint is attached detailing the specific allegations. Defendant now moves this Court to dismiss the complaint pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. For the reasons set forth below the Motion to Dismiss is granted in part and denied in part.

**I.**

The standard for granting a motion to dismiss is both well-settled and rigorous. A Court should not grant a motion to dismiss for failure to state a claim, pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson*, 355 U.S. 41, 45–46, 78 S.Ct. 99, 102, 2 L.Ed.2d 80 (1957) (footnote omitted). In determining whether there is a set of facts that could support a claim, "a court must take the allegations in the complaint as true and must make all reasonable inferences in favor of the plaintiff[ ]." *Watterson v. Page*, 987 F.2d 1, 3 (1st Cir.1993) (citation omitted).

**II.**

**A.**

**TITLE VII CLAIMS**

1. *Jurisdiction Over Plaintiff's Title VII Claims*

█ Defendants assert that this Court lacks jurisdiction over plaintiff's Title VII claims because (1) she has failed to obtain a right-to-sue letter from the Equal Employment Opportunity Commission (the "EEOC")

and (2) she has failed to institute proceedings with either the Rhode Island Commission for Human Rights (the "RICHR") or the EEOC. Defendants cite no authority, save the statute itself, in support of their proposition that these actions are jurisdictional prerequisites. *See generally* 42 U.S.C. § 2000e–5(f)(1).

■ In fact, as plaintiff correctly contends, a right-to-sue letter has been found to be a *statutory* prerequisite to the commencement of a suit, rather than a *jurisdictional* prerequisite. *Black v. Brown Univ.*, 555 F.Supp. 880, 883–84 (D.R.I.1983). As such, a right-to-sue letter is merely a condition precedent and therefore is "subject to equitable modification under appropriate circumstances." *Black*, 555 F.Supp. at 884. *Accord Rice v. New England College*, 676 F.2d 9, 10 (1st Cir.1982) (requirements of § 2000e–5(f)(1) are not jurisdiction). *See also Gooding v. Warner–Lambert Co.*, 744 F.2d 354, 358 (3d Cir.1984); *Wrighten v. Metro. Hospitals, Inc.*, 726 F.2d 1346, 1351 n. 3 (9th Cir.1984); *Fouche v. Jekyll Island–State Park Auth.*, 713 F.2d 1518, 1526 (11th Cir. 1983); *Pinkard v. Pullman–Standard*, 678 F.2d 1211, 1215 (5th Cir. Unit B 1982), *reh'g denied*, 685 F.2d 1383 (1982), *and cert. denied*, 459 U.S. 1105, 103 S.Ct. 729, 74 L.Ed.2d 954 (1983); *Hladki v. Jeffrey's Consol., Ltd.*, 652 F.Supp. 388, 392 (E.D.N.Y. 1987).

The critical issue, therefore, is not whether this Court lacks jurisdiction, but whether the plaintiff has demonstrated a sufficient reason for this Court to exercise its equitable powers. Plaintiff offers the following rationale for her failure to file charges with the EEOC or to request a right-to-sue letter: resort to the EEOC for a right-to-sue letter would have been fruitless. Plaintiff points to the two prior charges brought before the EEOC that were "resolved" but allegedly breached, and continue to be breached by the defendants. "Given the Plaintiff's long history with the EEOC in this case, as well as the Defendant's obvious disregard for the authority of the EEOC, it is appropriate in this situation to waive the right to sue letter requirement and permit the Plaintiff to proceed with her suit in this Court." Pl.'s Opp. to Defs.' Mot. to Dismiss at 6. In the alternative, plaintiff requests that the Court grant a stay of only the Title VII proceedings so that the plaintiff can file charges with the EEOC.

■ The circumstances in a Title VII action under which equitable modification is appropriate are limited. In *Black*, the Court determined that equitable modification can be premised on conduct attributable either to the defendant or to the EEOC. There, for example, nothing in the record suggested that the defendant obstructed or prevented the plaintiff from applying for or from obtaining a right-to-sue letter, but the record did reflect that the complainant was misled by the EEOC. *Black*, 555 F.Supp. at 884–85. Other courts have expanded the circumstances under which equitable modification is applicable:

(1) when a claimant has received inadequate notice; (2) when a motion for appointment of counsel is pending; (3) when a court has led a plaintiff to believe that he or she has done everything required; (4) when affirmative misconduct by a defendant has lulled a plaintiff into inaction (citation omitted); (5) when a 'plaintiff has in some extraordinary way been prevented from asserting his rights'; (6) when a plaintiff 'has raised the precise statutory claim in issue but has mistakenly done so in the wrong forum (citation omitted); (7) when a right to sue letter has been received subsequent to commencement of a Title VII action and while the action is still pending (citations omitted); or (8) when the EEOC or Attorney General has incorrectly refused to issue a right to sue letter (citation omitted).

*Hladki*, 652 F.Supp. at 393.

While I am reluctant to dismiss a seemingly legitimate claim, plaintiff simply has not demonstrated her entitlement to this Court's exercise of it's equitable authority. The plaintiff's personal opinion that resort to the EEOC would have been a waste of time, however rational, cannot be stretched to fit within the boundaries of this Court's discretion. Plainly stated, none of the above circumstances apply. As the Supreme Court has stated:

Procedural requirements established by Congress for gaining access to the federal courts are not to be disregarded by courts out of a vague sympathy for particular litigants.... '[I]n the long run, experience teaches that strict adherence to the procedural requirements specified by the legislature is the best guarantee of even-handed administration of the law.'

*Baldwin County Welcome Center v. Brown*, 466 U.S. 147, 152, 104 S.Ct. 1723, 1726, 80 L.Ed.2d 196 (1984) (quoting *Mohasco Corp. v. Silver*, 447 U.S. 807, 826, 100 S.Ct. 2486, 2497, 65 L.Ed.2d 532 (1980)).

I am not persuaded that this Court should waive the statutory right-to-sue letter requirement. Plaintiff will not be permitted to pursue her Title VII claims in this Court without the benefit of said letter. Thus, plaintiff's Title VII claims are dismissed without prejudice. Upon plaintiff's receipt of a right-to-sue letter plaintiff will be permitted to refile without prepayment of filing fees.

### 2. *Propriety of Naming Maureen Maigret and Susan Sweet as Defendants*

Defendants contend that plaintiff's Title VII claims against defendants Maigret, a former Director of the DEA and Sweet, Associate Director of the DEA should be dismissed since neither was named as a defendant in any action before the RICHR or the EEOC. Plaintiff, of course, argues to the contrary. In light of this Court's decision to dismiss plaintiff's Title VII claims, it is premature to address issues inextricably related to such claims. I reserve ruling on this issue until such time as the plaintiff's Title VII claims are properly before this Court.

### 3. *Punitive Damages Under Title VII*

Defendants argue that any claim for punitive damages under Title VII must fail since the Civil Rights Act of 1991 has been held not to include an award of punitive damages from governmental employers. Defendants maintain that all of the named defendants must be deemed to be "the State" and therefore are shielded from imposition of punitive damages pursuant to Title VII. Plaintiff offers no response to this contention. As

above, I reserve ruling on this issue until plaintiff's Title VII claims are properly before this Court.

### B.
### 42 U.S.C. § 1983 CLAIMS

### 1. *Preemption of 42 U.S.C. § 1983 claims by Title VII*

▆ Defendants claim that plaintiff's § 1983 claims should be dismissed as preempted by Title VII. However, defendants offer no support for this claim, instead focusing on whether defendants are susceptible, as an independent matter, to suit pursuant to § 1983. I will address that issue in the following sections of this memorandum.

As a threshold matter, and for the sake of clarity, this Court recognizes that § 1983 claims are *not* preempted by Title VII claims based on the same conduct. *See Wilson v. UT Health Center*, 973 F.2d 1263, 1268 (5th Cir.1992), *cert. denied*, —— U.S. ——, 113 S.Ct. 1644, 123 L.Ed.2d 266 (1993) ("Title VII does not preempt a collateral section 1983 action based on the same incident"); *Notari v. Denver Water Dep't*, 971 F.2d 585, 587 (10th Cir.1992); *Bradley v. Pittsburgh Bd. of Educ.*, 913 F.2d 1064, 1079 (3d Cir.1990). As the Second Circuit observed, "every circuit that has considered this issue has held that Title VII is not the exclusive remedy for discrimination claims against state or municipal employers, where those claims derive from violations of Constitutional rights." *Annis v. County of Westchester*, 36 F.3d 251, 254 (2d Cir.1994) (citations omitted).

### 2. *Defendants' Amenity to Suit in their Official Capacities under 42 U.S.C. § 1983*

▆ Defendants make the broad statement that neither the State, nor state officials acting in their official capacities are susceptible to suit in federal court because none are "persons" within the meaning of § 1983. However, as plaintiff correctly maintains, defendants have misread the Supreme Court's ruling in the landmark case *Will v. Michigan Dep't of State Police*, 491 U.S. 58, 109 S.Ct. 2304, 105 L.Ed.2d 45

(1989). While it is true that neither a state nor its officials acting in their official capacities are 'persons' amenable to suit for monetary damages under § 1983, *Will* also stands for the proposition that "even when acting in their official capacities, state officials are not insulated from suit for declaratory or injunctive relief." *Charron v. Picano,* 811 F.Supp. 768, 772 (D.R.I.1993). Because defendants Maigret and Sweet, acting in their official capacities, may be subject to declaratory or injunctive action pursuant to § 1983, they are properly named as defendants and will not be dismissed from this action in their official capacities.

### 3. *Defendants' Amenity to Suit in their Individual Capacities under 42 U.S.C. § 1983*

■ Defendants claim that plaintiff's § 1983 claim against Maigret and Sweet in their individual capacities is preempted by plaintiff's Title VII claim. Defendants cite case law in support of the proposition that a cause of action under § 1983 cannot be grounded solely on the basis of an alleged Title VII violation. However, it is clear from the face of the Complaint that plaintiff's § 1983 action is grounded in alleged violations of the Constitution. *See* Complaint ¶ 53 (alleging violation of plaintiff's right to enjoy "freedom of speech, movement, association and assembly, to petition her government for redress of grievances, and to be free from deprivations of life, liberty and property without due process of law").

■ More substantive is defendants' contention that the Complaint fails to make any allegations that could support a claim of individual liability against Maigret and Sweet. Defendants offer *Jones v. State of Rhode Island,* 724 F.Supp. 25, 28–29 (D.R.I.1989) for the proposition that where the complaint does not clearly set forth the capacity in which defendants are being sued, the Court should review the complaint to determine whether there are sufficient allegations to state a claim against defendants in their individual capacities. "If the complaint alleges specifically that each defendant acted outside the scope of his authority, then the defendants are being sued in their individual capacities." Mem. in Supp. of Defs.' Mot. to Dismiss at 13. Defendants also cite *Charron v. Picano,* 811 F.Supp. 768, 772–73 (D.R.I. 1993), which followed a strict approach to pleading, holding that a suit against a state official should not be construed as a personal capacity suit unless such a claim is clearly set forth in the pleadings.[1]

The fact is that the caption on the Complaint clearly states that both Maigret and Sweet are being sued in their official capacities *and* individually. It is hard to imagine a clearer expression of the plaintiff's intent to seek damages against these defendants in their personal capacities. As a result, this Court need not engage in an extensive analysis of the specific allegations against Maigret and Sweet as set forth in the Complaint.[2]

Finally, I note that defendants Maigret and Sweet, in their individual capacities, may be liable for monetary damages, as they are considered 'persons' for the purposes of § 1983. *Hafer v. Melo,* 502 U.S. 21, 27, 112 S.Ct. 358, 362–63, 116 L.Ed.2d 301 (1991). Upon receipt of the appropriate motions, this Court will address the question of whether Maigret and Sweet are entitled to qualified immunity in their individual capacities.

### 4. *42 U.S.C. § 1983 and the Statute of Limitations*

■ Defendants argue that plaintiff's Complaint alleges wrongdoing by the defendants from the years 1974 through 1991. Section 1983 contains no statute of limitations, and federal courts are thus required to

---

1. The Court, in adopting the more stringent approach, followed the lead of the Sixth and Eighth Circuits, citing *Wells v. Brown,* 891 F.2d 591, 592 (6th Cir.1989) and *Nix v. Norman,* 879 F.2d 429, 431 (8th Cir.1989). I note, for the record, that plaintiffs in both of those cases failed to specify in the respective captions of their complaints that the defendants were sued individually.

2. Although not necessary for this ruling, I note that defendants' portrayal that a complaint must allege that the defendants acted outside the scope of their authority in order to set forth a personal capacity claim is erroneous. As the Supreme Court observed in *Hafer v. Melo,* 502 U.S. 21, 28, 112 S.Ct. 358, 363, 116 L.Ed.2d 301 (1991), "Congress enacted § 1983 'to enforce provisions of the Fourteenth Amendment against those who carry a badge of authority of a State and represent it in some capacity, whether they act in accordance with their authority or misuse it' " (citation omitted).

apply the state statute of limitations which governs the forum state's most analogous cause of action. *Wilson v. Garcia*, 471 U.S. 261, 266–67, 105 S.Ct. 1938, 1941–42, 85 L.Ed.2d 254 (1985). Defendants contend that the most analogous cause of action is a personal injury action, which has a three year statute of limitations pursuant to R.I.Gen.Laws § 9–1–14. Since this suit was filed more than three years after the alleged wrongdoing, defendants reason that a § 1983 action is time-barred.

■ Plaintiff counters that the statute of limitations is affected by the fact that a violation is of a continuing nature. Plaintiff notes that the First Circuit has identified two types of continuing violations: serial and systemic. *See Jensen v. Frank*, 912 F.2d 517, 522 (1st Cir.1990). A serial violation is "a number of discriminatory acts emanating from the same discriminatory animus, each act constituting a separate wrong," *Kassaye v. Bryant College*, 999 F.2d 603, 606 (1st Cir.1993), while a systemic violation "has its roots in a discriminatory policy." *Jensen*, 912 F.2d at 523. As plaintiff correctly maintains, "[a] charge of discrimination is timely 'as to all discriminatory acts encompassed by the violation so long as the charge is filed during the life of the violation.'" Pl.'s Opp. to Defs.' Mot. to Dismiss at 9 (citing *Kassaye*, 999 F.2d at 606).

■ Defendants have properly identified a personal injury action as the most analogous cause of action existing in Rhode Island. *Cf. Morris v. Government Dev. Bank of Puerto Rico*, 27 F.3d 746, 748 (1st Cir.1994) (§ 1983 most analogous to Puerto Rico personal injury action). As such, a three year statute of limitations does indeed apply to the instant § 1983 action. However, plaintiff, too, correctly recites case law in support of the "continuing violation" theory.

The First Circuit recently discussed the requirements placed on a plaintiff in order for him or her to establish a continuing violation. *See Muniz–Cabrero v. Ruiz*, 23 F.3d 607, 610–11 (1st Cir.1994). In addition to reiterating the teachings of *Kassaye* and *Jensen*, the Court emphasized that a plaintiff must demonstrate that at least one discriminatory act occurred within the limitations period. "It is not enough to show that plain-tiff is merely feeling the effects of some earlier discriminatory action." *Muniz–Cabrero*, 23 F.3d at 610.

I am persuaded that plaintiff has alleged a continuing violation, such that each of plaintiff's charges of discrimination have been timely filed. I direct the reader to paragraphs 30–39 of the Complaint, wherein the plaintiff alleges a number of separate discriminatory actions. Plaintiff's allegations fit squarely within the definition of a serial violation. The independent allegations of harassment and intimidation based on plaintiff's race and national origin within the year preceding the institution of this action, for example, clearly meet the standards clarified in *Muniz–Cabrero*. The plaintiff's charge of discrimination is thus timely with respect to all discriminatory acts encompassed by the violation.

5. *Punitive Damages under 42 U.S.C. § 1983*

■ Defendants, citing *City of Newport v. Fact Concerts, Inc.*, 453 U.S. 247, 101 S.Ct. 2748, 69 L.Ed.2d 616 (1981), argue that punitive damages may not be recovered from a government entity. They request an Order specifying that in the event of recovery, the plaintiff may not be awarded punitive damages.

■ While it is clear from *City of Newport* that a municipality (and, by analogy, a state) is immune from punitive damages under § 1983, an official, sued in his or her individual capacity may, under the appropriate circumstances, be subject to punitive damages. *City of Newport*, 453 U.S. at 269, 101 S.Ct. at 2760–61. *See also Smith v. Wade*, 461 U.S. 30, 36 n. 5, 103 S.Ct. 1625, 1629 n. 5, 75 L.Ed.2d 632 (1983). Thus, defendants' request for an Order barring any award of punitive damages is rejected as overly broad.

C.

**OTHER CLAIMS**

1. *Res Judicata Effect of Settlement of Alleged Discriminatory Termination in 1989*

Defendants contend that the principle of *res judicata* precludes relitigation of the al-

legedly discriminatory termination of March 6, 1989. (*See* Complaint ¶ 19). They maintain that the dispute was resolved by a negotiated settlement, which was subsequently confirmed by the Superior Court for the State of Rhode Island. This confirmation, according to the defendants, constitutes an earlier court action between identical parties, and that, therefore, "any claims based upon plaintiff's termination of 1989 are barred by the doctrine of 'res judicata.'" Mem. in Supp. of Defs.' Mot. to Dismiss at 16.

Plaintiff counters that defendants' application of res judicata is incorrect, noting that the alleged retaliatory discharge of 1989 is "merely one aspect in a long history of discriminatory treatment of the Plaintiff by the Defendants." Pl.'s Opp. to Defs.' Mot. to Dismiss at 15. As such, plaintiff argues that she may use the facts and circumstances surrounding the 1989 incident "as evidence of an ongoing pattern of racial discrimination against the Plaintiff." *Id.*

While my inclination is to adopt the plaintiff's position on this point, I hesitate to do so based upon the scant recitation of authority by each of the litigants.[3] I will reserve ruling on this issue until I have received further briefing by the parties, complete with authority specifically related to the issue presented to this Court.

### 2. *42 U.S.C. § 1985*

Defendants argue that plaintiff has failed to sufficiently allege a cause of action pursuant to § 1985(3).[4] To state a claim under § 1985(3), defendants maintain that four elements must be alleged with appropriate factual specificity: (1) a conspiracy; (2) for the purpose of directly or indirectly depriving any person or class of persons of the

equal protection of the laws, or of equal privileges and immunities under the laws; (3) that one or more of the conspirators' actions were in furtherance of the conspiracy; and (4) that the plaintiff's person or property was injured or that he was deprived of exercising a right or privilege of a United States citizen. Noting that conclusory allegations of conspiracy, without factual support, are insufficient to state a § 1985(3) claim, defendants contend that plaintiff's Complaint fails to meet this standard.

Plaintiff, of course, contends that she has alleged sufficient facts, not mere conclusory allegations, to support a claim under § 1985. Plaintiff specifically notes that the Complaint sets forth the events that establish a pattern of discrimination which satisfies the requirement that defendants took action in furtherance of the conspiracy.

Despite the defendants' failure to cite First Circuit case law in support of their position, it is clear that the First Circuit requires that "allegations of conspiracy be supported by material facts, not merely conclusory statements." *Slotnick v. Garfinkle*, 632 F.2d 163, 165 (1st Cir.1980) (citation omitted). *See also Francis–Sobel v. University of Maine*, 597 F.2d 15, 17 (1st Cir.), *cert. denied*, 444 U.S. 949, 100 S.Ct. 421, 62 L.Ed.2d 319 (1979). Applying this standard, I must conclude that the Complaint does not adequately allege the existence of a conspiracy. Namely, plaintiff simply has failed to provide any specific facts in support of collusion or concerted action on the part of defendants. Without more, the § 1985(3) action must be dismissed. *See, e.g., Barcelo v.*

---

**3.** The citation of the basic principles of the doctrine of *res judicata*, while helpful, are insufficient to appropriately address the specific issue before me.

**4.** 42 U.S.C. § 1985(3) provides, in part:
> If two or more persons in any State or Territory conspire ... for the purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws or of equal privileges and immunities under the laws ... [and] if one or more persons engaged therein do, or cause to be done, any act in furtherance of the object of such

conspiracy, whereby another is injured in his person or property or deprived of having and exercising any right or privilege of any citizen of the United States, the party so injured or deprived may have an action for the recovery of damages, occasioned by such injury or deprivation, against any one or more of the conspirators.

For a detailed discussion of the legislative history and purposes of § 1985, see *Griffin v. Breckenridge*, 403 U.S. 88, 101, 91 S.Ct. 1790, 1798, 29 L.Ed.2d 338 (1971).

*Agosto,* 876 F.Supp. 1332, 1350 (D.P.R.1995).[5]

### 3. *42 U.S.C. § 1985 and the Statute of Limitations*

Defendants proffer that, like § 1983 actions, § 1985 actions are governed by Rhode Island's three year statute of limitations for personal injury actions. As a result, all claims involving acts occurring more that three years prior to the filing of this action are barred as untimely.

I need not reiterate the "continuing violation" theory and analysis found in Part II.B.4 of this memorandum. For all of the reasons set forth above, I find that plaintiff has demonstrated a continuing violation and her § 1985 claim is therefore timely filed. However, since I have already determined that plaintiff has failed to adequately state a § 1985 claim, *see supra* Part II.C.2, this conclusion is academic.

### 4. *42 U.S.C. § 1981*

■■■ Defendants claim that plaintiff cannot maintain a cause of action based upon § 1981 because the majority of courts have held that § 1981 is inapplicable to state governmental entities.[6] Plaintiff counters that defendants improperly rely upon precedent from jurisdictions that rely on Eleventh Amendment immunity to preclude suits against the State under § 1981. In contrast, plaintiff argues, the State of Rhode Island has waived its Eleventh Amendment immunity from suit under the Civil Rights statutes.

■■■■ It is clear that the Eleventh Amendment bars a § 1981 action against a state. However, it is equally as clear that a state may waive its immunity and consent to be sued in federal court. *Freeman v. Michigan Dep't of State,* 808 F.2d 1174, 1178–79 (6th Cir.1987). In fact, R.I.Gen.Law § 9–31–1 provides, in pertinent part, "The state of

Rhode Island ... shall ... hereby be liable in all actions of tort in the same manner as a private individual or corporation." This statute constitutes a clear waiver of the State's Eleventh Amendment immunity in the appropriate cases. *See, e.g., Pride Chrysler Plymouth v. R.I. Motor Vehicle Dealers' License Comm'n,* 721 F.Supp. 17, 22 (D.R.I. 1989) (R.I.Gen.Law § 9–31–1 provides waiver of State's immunity for purposes of § 1983 action). *See also Laird v. Chrysler Corp.,* 460 A.2d 425 (R.I.1983) (broad language of R.I.Gen.Law § 9–31–1 constitutes unambiguous waiver of Eleventh Amendment immunity from suit in federal court). As § 1981 is, in essence, a tort action, where the wrongdoing is racial discrimination, and plaintiff has pleaded such racial discrimination in her Complaint, the State of Rhode Island is properly haled into federal court.

### 5. *State Claims*

■■■ Defendants argue, finally, that the state law claims should be dismissed in the interest of judicial economy, convenience, fairness and comity. However, this argument is premised upon the success of defendants' motion to dismiss the plaintiff's federal claims. As several federal claims remain viable, this Court properly exercises pendant jurisdiction over plaintiff's state law claims pursuant to 28 U.S.C. § 1367.

### III.

For the reasons stated above, it is hereby ordered that: (1) plaintiff's Title VII claims are dismissed without prejudice; (2) plaintiff's 42 U.S.C. § 1985 action is dismissed without prejudice; (3) the parties will each submit a brief of no longer than five pages as specified in Part II.C.1 within two weeks;

---

5. It is, of course, within this Court's discretion to permit the Complaint to be amended, absent undue prejudice to the defendants. *McGillicuddy v. Clements,* 746 F.2d 76, 78 (1st Cir.1984). However, the onus remains on the plaintiff to provide the appropriate factual support for her § 1985(3) claim.

6. 42 U.S.C. § 1981(a) provides:

All persons within the jurisdiction of the United States shall have the same right in every State and Territory to make and enforce contracts, to sue, be parties, give evidence, and to the full and equal benefit of all laws and proceedings for the security of persons and property as is enjoyed by white citizens, and shall be subject to like punishment, pains, penalties, taxes, licenses, and exactions of every kind, and to no other.

**64**

and (4) defendants' motion to dismiss is denied in all other respects.

SO ORDERED:

## APPENDIX

### COMPLAINT

1. This complaint alleges employment discrimination based on race, color and national origin, racial harassment, and other tortious conduct, in violation of Federal and State law and alleges that defendants deprived plaintiff of rights guaranteed by the Constitution and laws of the United States and of the State of Rhode Island. As an employee of the State of Rhode Island, Tang has not been allowed the same privileges of other similarly situated employees and has been, otherwise, generally subjected to discriminatory and retaliatory working conditions.

*Parties*

2. Plaintiff Rhoda Tang ("Tang") is a resident of the State of Rhode Island who is Asian–American and female.

3. Defendant State of Rhode Island is a governmental body operating social services for elderly citizens of the State of Rhode Island.

4. Defendant Department of Elderly Affairs ("DEA") is a state agency of defendant State of Rhode Island and is an employer within the State of Rhode Island and within the jurisdictional coverage of Title VII of the Civil Rights Act.

5. Defendant Maureen Maigret ("Maigret") is a resident of the State of Rhode Island and is Director of DEA.

6. Defendant Susan Sweet ("Sweet") is a resident of the State of Rhode Island and is Associate Director and Affirmative Action Officer of DEA.

7. At all times material to this action, the defendants, and each of them, have acted under color or custom or usage of law, and the laws of the State of Rhode Island, and continue to so act.

8. The defendants have individually and collectively discriminated against the plaintiff solely on the basis of the fact that the plaintiff is an Asian-american female.

*Jurisdiction*

9. The jurisdiction of this Court is invoked pursuant to 28 U.S.C. §§ 1331 and 1343 to secure protection and to redress deprivation of rights secured by: The First, Thirteenth and Fourteenth amendments to the United States Constitution; Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.* (as amended); and the Civil Rights Act of 1871, 42 U.S.C. §§ 1983, 1985 and 1988.

10. The supplemental jurisdiction of this Court is invoked with respect to plaintiff's claims under the laws of the State of Rhode Island, pursuant to 28 U.S.C. § 1367.

*Facts*

11. Tang is the only Asian–American employee of the DEA, State of Rhode Island.

12. In or around February 1974, Tang became employed and is presently employed by DEA as Public Health Nutritionist.

13. Despite Tang's long tenure, statutory status as an employee of the State of Rhode Island, and qualifications, Tang has not been promoted since her hire in February 1974.

14. During Tang's tenure with DEA, she was subjected to discriminatory terms and conditions of employment, harassed and falsely disciplined for conduct she did not commit, solely because of her race, color, or national origin.

15. On or about February 12, 1987, Tang filed a charge of employment discrimination against the State of Rhode Island and DEA with the Rhode Island Commission for Human Rights ("RICHR") and the Equal Employment Opportunity Commission ("EEOC") alleging discriminatory terms and conditions of employment due to race, color and national origin. (RICHR No. 87 EAO 178–07/07, EEOC No. 16J870083).

16. On or about October 29, 1987, Tang and DEA agreed to a Negotiated Settlement Agreement of RICHR No. 87 EAO 178–07/07 and EEOC No. 16J870083 before RICHR by which DEA agreed that all personnel policies

would be implemented in a manner free from bias and that Tang's work environment would be free of harassment. Tang agreed that she would report any actions contrary to the agreement to the Director of Elderly Affairs for resolution.

17. Notwithstanding the aforesaid Agreement referred to in the preceding paragraph, the racial harassment continued, and on or about January 9, 1989, Tang requested a medically approved leave of absence due to work-related stress resulting from racial harassment.

18. On or about February 17, 1989, Tang was ordered by DEA to return to work notwithstanding medical opinion finding Tang disabled from her position.

19. On or about March 6, 1989, DEA terminated Tang, stating that she resigned without notice when she did not return due to her work-related disability.

20. The grounds for the aforesaid acts were false and retaliatory and designed to harass and punish Tang because of her race, color and national origin, and because of her complaints of discrimination.

21. In or around March 1989, pursuant to the collective bargaining agreement between the union and DEA, Tang and her labor representative, Local 2895 of Council 94, AFSCME, filed a grievance challenging her termination as violative of the collective bargaining agreement's termination and anti-discrimination provisions.

22. Additionally, on or about May 4, 1989, Tang filed a "Charge of Breach of Negotiated Settlement" with RICHR as well as charges of discrimination and retaliation due to continuing harassment and her termination. (RICHR No. 87 EAO 178–07/06, EEOC No. 16J870083; RICHR No. 89 ERT 329–07/06, EEOC No. 16J890179).

23. On or about February 19, 1990, a Consent Decree was entered in Workers' Compensation Court ordering compensation for total disability for the period of January 9, 1989 to November 29, 1989 as the result of work related injuries, specifically stress and depression resulting from racial discrimina-tion and a racially hostile working environment. *Tang v. State of Rhode Island*, W.C.C. No. 89–9089 (Rotondi, 2/19/90).

24. On or about March 6, 1991, the Rhode Island Commission for Human Rights issued a finding of probable cause in Tang's charges of retaliation and discrimination in RICHR No. 89 ERT 329–07/06 and EEOC No. 16J890179.

25. On May 20, 1991, DEA and Local 2895 stipulated to an arbitrator's award by which DEA agreed to reinstate Tang and compensate Tang for all lost wages and benefits and by which Tang agreed to withdraw the charge of racial discrimination filed with RICHR and EEOC.

26. Notwithstanding the stipulated award, DEA refused to comply with the Stipulated Arbitration Award ordering DEA to reinstate Tang and to compensate Tang for lost back pay and benefits. On or about September 30, 1991, Council 94 filed a petition for confirmation of the Stipulated Arbitration Award. On or about October 22, 1991, the Superior Court entered an order confirming the award.

27. On February 9, 1992, more than eight (8) months after the stipulated award, Tang was reinstated to DEA to a different division than before her unlawful and improper termination.

28. Notwithstanding the Stipulated Arbitration Award and the Superior Court's October 22, 1991 order, DEA refused to pay the compensation for back pay and benefits until March 27, 1992.

29. On or about February 10, 1994, pursuant to the collective bargaining agreement between Local 2895 and DEA, Tang and her Local 2895 filed another grievance challenging a disciplinary notice and alleging racial discrimination.

30. On or about February 15, 1994, a hearing was convened over the grievance referred to in the preceding Paragraph. At the meeting, representatives of management and the hearing officer, Anthony Zompa, Associate Director of Program Planning, refused to sequester management witnesses upon Tang's request. The presence of the witnesses was intended to intimidate and ha-

rass Tang. Such treatment was disparate from the treatment of the white majority who during grievance hearings did not have management witnesses present throughout the hearing.

31. On or about March 22, 1994, DEA was held in civil contempt by the Providence Superior Court for failure to pay interest that had accrued to Tang on her lost wages and benefits pursuant to the Stipulated Arbitration Award that was confirmed by the Superior Court, and was ordered to make those payments. *R.I. Council 94, AFSCME, AFL–CIO v. State of Rhode Island and the Dept. of Elderly Affairs,* C.A. No. 91–6666 (Needham, J. 3/22/94).

32. The aforesaid action by DEA, under color of law, in refusing to reinstate Tang and to pay monies rightfully hers deprived her of her rights guaranteed by Fourteenth and Thirteenth Amendment of the United States Constitution and by the laws of the State of Rhode Island and caused her mental anguish and emotional distress.

33. In the months ensuing since Tang's return to work, the harassment continued and escalated. DEA and its agents engaged in numerous reprimands and threats designed to harass and intimidate Tang and to suppress her expression of the rights guaranteed by the Constitution of the United States. Such treatment was at all times disparate from the treatment received by members of the white majority.

34. As part of the pattern and practice of employment discrimination and retaliation against her, Tang was terminated and then reinstated, relocated three times, supervised by co-workers with less seniority and at lower levels, given duties outside her job specification, and discriminatorily treated at grievance hearings. In addition, callers were informed that Tang no longer worked for DEA and Tang was placed in situations designed to frustrate, intimidate and embarrass her.

35. On or about March 4, 1994, Tang's position was "abolished" by DEA without notice to Tang or to Local 2895 and Tang was placed on administrative leave. Upon discovering that Tang was entitled to "bump"

another employee, DEA rescinded the abolishment and reinstated Tang.

36. On March 13, 1994, Tang returned to work and was told to report to a new division, but was assigned to perform the same duties as she had prior to the attempted abolishment.

37. On or about May 5, 1994, Tang petitioned Maigret, Director of DEA, by written memorandum, for an investigation into the improper, illegal and harassing conduct of a co-worker, Frank St. Pierre, which was resulting in a hostile working environment.

38. On or about May 6, 1994, Maigret responded by directing Tang to contact her immediate supervisor, such procedure being in violation of the RICHR Negotiated Settlement Agreement by which Tang agreed to report claims of discrimination to the Director.

39. Notwithstanding the pledge of investigation by Maigret, no investigation ever took place and on or about July 11, 1994, Maigret informed Tang that there was no evidence of harassment.

40. The denial of equal protection of the law was expressly agreed to, ratified and permitted by DEA acting under color of state law and acting in its capacity as an administrative agency of the State of Rhode Island, in unlawful, reckless, and deliberate disregard of the civil rights and liberties of Tang.

41. The conduct of DEA, and its agents deprived Tang of equal protection of the law in violation of the Fourteenth Amendment to the Constitution of the United States and caused Tang to suffer the badges and incidents of slavery in violation of the Thirteenth Amendment to the constitution of the United States as enforced by 42 U.S.C. §§ 1983 et seq.

42. The State of Rhode Island had knowledge of, or, had they diligently exercised their duty, should have had knowledge of the violations and deprivations of Tang's constitutional rights. State of Rhode Island had the power to prevent or aid in the prevention of the commission of such wrongs, and could have done so by reasonable diligence, but neglected or refused to do so.

43. The course of conduct described above has resulted in numerous reprimands, threats, and other intimidating conduct designed to harass Tang, such treatment being discriminatory in nature to Tang by reason of her minority status. Further, such treatment was meted out upon Tang solely because of such status.

44. Defendants, and each of them, failed and refused to take appropriate corrective action to end the hostile, intimidating and discriminatory conditions at DEA, or to prevent retaliation against plaintiff when plaintiff specifically notified of the alleged intolerable conditions of racial discrimination.

45. The foregoing acts and omissions were intentional and were motivated by malice or ill will, or involved reckless or callous indifference to the constitutionally and statutorily protected rights of others.

46. As a direct and proximate result of the acts of defendants, and each of them, Tang suffered medical expenses, severe mental anguish, embarrassment, loss of professional and personal reputation, the inability to effectively carry out her duties, medical and legal expenses, and other damages, mental, physical, and emotional. These damages flow directly from, and are intimately connected to the deprivations, violations, and infringements of Tang's constitutional and statutory rights as guaranteed by the Thirteenth and Fourteenth Amendments to the Constitution of the United States and protected by 42 U.S.C. §§ 1983 et seq., as guaranteed by Article I, Section 2 of the Rhode Island Constitution and the laws of Rhode Island.

WHEREFORE, plaintiff prays as hereafter set forth.

*Claims for Relief*

COUNT I

RACIAL DISCRIMINATION IN VIOLATION OF TITLE VII

(42 U.S.C. § 2000e–2)

47. Paragraphs 1 through 47 are hereby incorporated by reference as though fully set forth herein.

48. By the foregoing acts and omissions, defendants maliciously and callously violated Title VII, 42 U.S.C. § 2000e–2 by discriminating against plaintiff with respect to compensation, promotion, terms, conditions, privileges and tenure of employment because of race.

WHEREFORE, plaintiff prays as hereafter set forth.

COUNT II

RETALIATION IN VIOLATION OF TITLE VII

(42 U.S.C. § 2000e–3)

49. Paragraphs 1 through 47 are hereby incorporated by reference as though fully set forth herein.

50. By the foregoing acts and omissions, Defendants, and each of them, engaged in various retaliatory actions and conducted an intentional pattern and practice of retaliatory harassment against plaintiff as a result of her opposition to racial discrimination and harassment at DEA and as a result of her filing charges of employment discrimination with the Rhode Island Commission for Human Rights and the Equal Employment Opportunity Commission in violation of 42 U.S.C. § 2000e–3(a).

WHEREFORE, plaintiff prays as hereafter set forth.

COUNT III

CIVIL RIGHTS DEPRIVATION IN VIOLATION OF

42 U.S.C. § 1983

51. Paragraphs 1 through 47 are hereby incorporated by reference as though fully set forth herein.

52. Defendants acted in an outrageous and systematic pattern of harassment, oppression, intimidation, bad faith, employment discrimination, cover-up and retaliation directed at Tang and continuing over many years and on information and belief continuing to the present time.

53. Defendants, under color of state law, and having been fully advised that plaintiff was being deprived of her constitutional rights, either acted in a concerted, malicious, intentional pattern to retaliate against plaintiff or knowing that such retaliation was taking place, knowingly omitted to act to protect plaintiff from continuing deprivations of her rights to enjoy freedom of speech, movement, association and assembly, to petition her government for redress of grievances, and to be free from deprivations of life, liberty and property without due process of law; all in violation of the Constitution and laws of the United States and of 42 U.S.C. § 1983.

WHEREFORE, plaintiff prays as hereafter set forth.

## COUNT IV

### RACIAL DISCRIMINATION IN VIOLATION OF
### THE CIVIL RIGHTS ACT OF 1990

#### (R.I.G.L. § 42–112–1)

54. Paragraphs 1 through 44 are hereby incorporated by reference as though fully set forth herein.

55. By the foregoing acts and omissions, Defendants violated The Civil Rights Act of 1990, R.I.G.L. § 42–112–1 by depriving plaintiff of her right to a neutral work environment, and by denying plaintiff equal terms and conditions of employment and to full and equal benefits of all laws and proceedings.

WHEREFORE, plaintiff prays as hereafter set forth.

## COUNT V

### RACIAL DISCRIMINATION IN VIOLATION OF
### FAIR EMPLOYMENT PRACTICES ACT

#### (R.I.G.L. § 28–5–7)

56. Paragraphs 1 through 47 are hereby incorporated by reference as though fully set forth herein.

57. By the foregoing acts and omissions, defendants maliciously and callously violated R.I.G.L. § 28–5–7 by discriminating against plaintiff with respect to compensation, promotion, terms, conditions, privileges and tenure of employment because of race.

WHEREFORE, plaintiff prays as hereafter set forth.

## COUNT VI

### RETALIATION IN VIOLATION OF FEPA

#### (R.I.G.L. § 28–5–7(5))

58. Paragraphs 1 through 47 are hereby incorporated by reference as though fully set forth herein.

59. By the foregoing acts and omissions, defendants violated R.I.G.L. § 28–5–7(5) by retaliating against Tang for her complaints of racial harassment in refusing to promote her, by terminating her, by relocating her and by placing her in situations designed to frustrate, humiliate and punish her.

WHEREFORE, plaintiff prays as hereafter set forth.

### *Prayer for Relief*

Plaintiff prays that this Honorable Court:

a) Permanently enjoin defendants, and each of them, from violating 42 U.S.C. §§ 1981, 1983, the Thirteenth and Fourteenth Amendments to the United States Constitution, Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.*, as amended, 42 U.S.C. § 1983, and the FEPA, R.I.G.L. § 28–5–1 *et seq.*, as amended, the Civil Rights Act of 1990, R.I.G.L. § 42–112–1 *et seq.*

b) Order affirmative relief pursuant to 42 U.S.C. § 2000e–5(g)(1), R.I.G.L. § 28–5–24.1, R.I.G.L. § 42–112–2, and the common law of the State of Rhode Island.

c) Award compensatory, punitive and exemplary damages, pursuant to 42 U.S.C. § 1981, R.I.G.L. § 28–5–24.1, and R.I.G.L. § 42–112–2.

d) Award attorney's fees, pursuant to 42 U.S.C. § 2000e–5(K), R.I.G.L. § 28–5–24.1, and R.I.G.L. § 42–112–2.

e) Award expert fees, pursuant to 42 U.S.C. § 2000e–5(K), R.I.G.L. § 28–5–24.1, and R.I.G.L. § 42–112–2.

f) Order such other relief as the Court deems just and proper.

Respectfully submitted,

RHODA TANG,

By her attorneys,

LAW OFFICE OF MARC B. GURSKY

/s/ Marc B. Gursky
Marc B. Gursky (# 2818)
Christine Nickerson (# 4875)
410 South Main Street
Providence, RI 02903
Tel. (401) 454–7400
Fax. (401) 621–8553

*Jury Trial Demand*

Plaintiff hereby demands trial by jury on all issues triable by right to a jury.

/s/ Marc B. Gursky
Marc B. Gursky